R. and A. P. Turley v. Tucker.

SEPT. TERM
1840.

R. and A. P.
Turley
v.
Tucker.

| 6 | 583 |
| 61a | 294 |
| 6 | 583 |
| 64a | 350 |

1. The possession sufficient to maintain the action of trover must be a lawful possession, one trespasser or wrong doer cannot maintain trover against another.
2. Persons cutting timber on the lands of the United States, not being actual settlers, are mere trespassers, and do not thereby acquire any property, either general or special, in the timber.
3. Trespassers on the lands of the United States occupy the same position with trespassers on the lands of private individuals. (James and Massay v Snelson, 3. Mo. R. p. 393. overruled.)

Appeal from Ste. Genevieve Circuit Court.

*Cole for Appellant.*

1st. The circuit court erred in refusing to give instructions 1, 2, 6, 7, 8, 9, 10, as required by defendant, and in giving the instructions asked by plaintiff.

2nd. That the appellees were trespassers, and cut the timber in the declaration mentioned on the land of the United States, without any view to settlement, cultivation, or obtaining an interest therein, and as such trespassers acquire neither in virtue of public policy, nor law, a general or special property in the timber cut so as to enable them to maintain the above action.

3rd. That the plaintiffs must shew in order to maintain the above action, that they had either a general or special property in the timber converted, and that they had the actual possession thereof, or the right to immediate possession.

4th, That when a plaintiff recovers in trover the defendant by operation of law obtains a title to the property in controversy, and the plaintiff gets the value in damages 2, Kent Comm. 319.

5th. That in trover defendant may shew a little in a stranger paramount to that of plaintiff as a bar, 14 Johns Rep. 128.

6th. Trover may be brought by the person having either a general or special property, but a recovery by one is a bar to an action by the other 1, Chitty plea 152.

7th. Absolute or general property in chattles is where possession is united with the exclusive right to enjoy them, special property is the mere possession of property by one with the assent of the true owner, Webb v Fox. 7, Dar and East, 391.

N 2

SEPT. TERM.
1840.

R. and A. P.
Turley
v.
Tucker.

8th. That there was no law of the government of the United States at the time the above trespasses were committed by appellees, that gave them authority to cut timber upon the public domain, or a right to such timber, or a right of possession in the land without the purchase thereof according to law (act of Congress 19th June 1834.)

### Brickey for Appellee.

1. Can the action of trespass or trover be sustained by one who cuts wood or timber upon public land, the right of soil remaining in the United States, against a wrong doer who takes it off and converts to his own use? 2, Stark Evi. 837, 2, Phil. Evi. 121, 6, Bac. Abr. 707; 2, Saunds Rep. 47 (note I) 1 Camp, Rep. 551, (Greenstreet v Carr) 3 Mo. Rep. 393, (James and Massie v Snelson.

2nd. Did the court misdirect the Jury as to the law of the case, and thereby commit such error as to entitle the defendant to a new trial? 2, Cains Cases 83 (Depyster v Colo Ins.) 3. Mo. Rep. 382 (Homes v McKenney.)

3d. The court was not bound to give instructions to the Jury upon abstract propositions of law: Therefore, the instructions asked for by the defendant and not given, were properly rejected by the court, there being no evidence in the case to warrant the court in giving such instructions, and had they have been given it would have been error.

4th. The deposition of Burks offered by the defendant was very properly excluded by the court.

5th. The 3d, 4th and 5th instructions asked by the defendant and given by the court contain all the law of this case scattered through all the other instructions which were asked for and refused by the court.

### Opinion of the Court by Napton Judge.

The Turleys sued Tucker in an action of trover, and had a judgment for three hundred and seventy five dollars. On the trial the following facts appeared: The plaintiffs were owners of a saw mill, and in the spring of 1837 employed some ten or twelve hands to cut down trees in a pinery about three miles from their mill, and within a half a mile of the saw mill, belonging to Tucker.

The hands employed cut down twelve or fourteen hun-  SEPT. TERM.<br>1840.
dred trees, cut off the tops, and marked them in convenient
lengths for stocks.  The Turleys hauled away some of the R. and A. P.<br>Turley<br>v.<br>Tucker
logs, but Tucker some time in the fall hauled away some
two or three hundred of the same logs.  Tuckers mill saw-
ed from twelve to twenty five stocks per day, and Turleys
mill ran about one third of the time, and sawed from one
thousand to twelve hundred feet of plank per day.  It was
admitted that the logs were cut on the public land.

The instructions refused to be given by the court, at the
instance of defendant, it is unnecessary to insert, as they
were in substance that the action could not be sustained on
the facts above specified.  Two of them will be sufficient to
illustrate some points in the case.  The seventh instruction
which the court refused was as follows: "If the jury shall
find from the evidence in the cause that the plaintiff cut
down the timber, in the declaration mentioned, without a
bona fide view to its use, and did not use the same, the tim-
ber being and appertaining to the public domain, and lying
as cut down from the first of March 1837 until the first of
September 1837, then the said plaintiffs are trespassers
against the United States, and cannot recover against defen-
dant for using a part of said timber."  The eighth instruc-
tion, which was also refused, was as follows: "If the jury
shall find from the evidence that the plaintiffs cut the timber
in the declaration mentioned upon the land of the United
States without any view to settlement or cultivation of the
land, or acquiring a right or interest therein, then the plain-
tiffs are trespassers and acquired no interest in said timber by
virtue of said trespass, and cannot recover in this action."

The court gave the following instruction:  "Although
the logs might have been cut by the plaintiffs on public land
for their own use yet they acquired such property in the
logs, as will enable them to maintain an action of trover for
the logs against a wrong doer."

A motion was made for a new trial which was overruled,
and the case is brought here by appeal.

The decision of a majority of this court in the case of
Massie and James v. Snelson (3d Mo. Rep. 393) undoubtedly

embraces the only material question arising from the record now before the court. In venturing to question the conclusions to which the court in that case arrived, it is proper that I should examine somewhat at large the grounds of that decision.

To maintain an action of trover at the common law, the plaintiff must have a property either *absolute* or *special* and the possession or right to the immediate possession of the goods which are the subject of controversy, 2, Whea. Selw 1050, 6, Bac. Abr. Tit, trover C. There is no pretence that the plaintiff had any absolute property in the subject matter of the controversy. Had they such a special property as would maintain trover?

The special property spoken of by the books as sufficient to maintain the action of trover, is of two kinds and of two kinds only. The first is that property which is founded on a mere possession, held subject to the claims of the absolute owner. The other is a temporary property without possession, only one instance of which I have seen recorded in the books, (Roberts vs Wyatt, 2 Taun. 268,) and which has no affinity to the present case.

The first class of special property arising out of mere possession, and which will sustain the action of trover against a mere wrong doer, is the only kind which bears upon the case under consideration. The authorities are very clear that mere possession is sufficient prima facie evidence of property to maintain this action against a wrong doer.

1st. Did the plaintiff by cutting the timber on the land of the United States acquire such possession?

The entire argument upon which the plaintiffs right is sustained, is founded, I think, upon a mistaken interpretation of the general law maxim just alluded to. The cases of special property referred to by the authorities in illustration of that maxim, are that of a bailee, a carrier, a lessee for life, a lord who seizes an estray, a sheriff who has levied on goods, and the finder of a jewel. In all these cases, and every other instance of special property founded on possession, the possession has been a peaceable and *lawful* possession, or a possession acquired by some shadow of title from

the absolute owner. There is no case of a mere tresspasser, acquiring by his trespass, constructive possession. It seems to be contrary to the settled usages of law, for courts to interfere in such cases, and aid one trespasser against another. For the peace of society, the law will interfere so far as to protect actual possession, but will not raise a presumptive possession as the foundation of a special property. This appears clear not only from the very language in which this doctrine is couched, but from the reasons by which law writers have supported it. Mr. Starkie says, (3 Stark. Evi. p. 1487.) "If the action he brought against a mere wrong doer, the mere fact of possession by the plaintiff is usually sufficient evidence of title, even although the plaintiff claim under a title which is defective, for the possession of property is, as has been seen, *prima facie* evidence of ownership.

The only reason then why possession is sufficient to maintain this action is because it is prima facie evidence of ownership, either absolute or special. The possession of bailee's, carriers, &c., is evidence of their ownership, and that evidence could not be rebutted by showing the absolute property in another, in a suit of this character, because that absolute property would not be inconsistent with such ownership as they claim. They hold by the express or implied consent of the absolute owners, but in the case before the court the very evidence which establishes the possession proves also that possession to be tortious, and consequently the plaintiffs possession being only *prima facie* evidence of property is rebutted by establishing a conflicting claim to an absolute property in another.

But let us examine the cases which have been relied on, and which are certainly the strongest to sustain the plaintiffs claim. In Sutton vs. Buck, (2 Taun. 302,) it was proved that the plaintiff being possessed of a cottage at T, and an inhabitant there, and as such, claiming a right to cut rushes upon the T. common for his own use, cut down five or six loads of rushes, which defendant seized and carried away. The court sustained the action. The court said: "Indeed if a person hath no color of right at all to cut down

rushes, or to take away other things, he cannot by cutting the rushes or taking the thing without any color of right acquire property therein. But in the case at bar the plaintiff proved he had a right to cut the rushes and that he did cut them; and we are all of opinion that he did thereby acquire a property therein." There is nothing in this case to countenance the doctrine held in Massie and James vs. Snelson, unless it can be shown that those who trespass on the lands of the United States are differently situated from ordinary trespassers upon the lands of private persons. This we will presently enquire into.

The next case bearing on this point is the case of Bassett vs. Maynard, (Cro. Eliz. 819) the substance of which may be found in a note of Mr. Williams, (2 Saun. 47, c.) sir T. Palmer being seized of a great wood, granted to Cornford as many trees as would make six hundred cords of wood, Cornford assigned his interest to plaintiff, afterwards sir T. Palmer granted to defendant so many trees as would make four thousand cords of wood to be taken at his election. The plaintiff by the assignment of Sir T. Palmer cut down the trees in question, and the defendant claiming by virtue of the grant, took them, and it was found there was sufficient wood left for defendant. It was held that the action was maintainable even admitting the grant to plaintiff to have been void for, says the reporter, "by the cutting down of them he had possession, and a good title against defendant, and every stranger, and being cut down it was not lawful for defendant to take them." Here the plaintiffs claimed a right to cut the wood under a grant from the owner of the land. It was *prima facie* no trespass, and as we shall see hereafter, in investigating the nature of the defence which may be set up in a case of this kind, the defendant could not rebut the prima facie title arising from possession, by showing that the deed was void, because he claimed no title himself under the rightful owner inconsistent with the right of the plaintiff. It was proved that there was wood enough for both the grantees. This observation will apply to the case of Woodson vs. Newton, (2 Stra. 777).

*The posses-sion sufficient to maintain the action of trover must be a lawful possession: one trespasser or wrong doer cannot maintain trover against another.*

in which, as well as the other case cited, the plaintiff claim-
ed under and by consent of the absolute owner.

The case of Schermehorn vs. Van Volkenburgh, (11
Johns R. 529,) is illustrative of the principle now contended
for. That was a case of a sheriff who levied on chattels
and took possession, and this possession the court held to be
sufficient evidence of a special property to maintain trover.
But the court in this case proceed to say:

"There is no doubt that a defendant in an action of trover
may show title in a third person," and accordingly reversed
the judgment of the court below, because it had refused to
admit evidence offered of a paramount title in a third person.

The case of Kennedy vs. Strong (14 Johns. R. 128,) turn-
ed upon the admission of the defendant that plaintiff had
property, and the court would not therefore permit him af-
ter such acknowledgment to set up a title in a third person.

In Rotan vs. Fletcher, (15 John R. 207,) the defendant
was allowed to set up property in a third person.

It has also been held that the defendant shall not be al-
lowed to set up property in a third person, without some
shadow of claim in himself; 11 Wend. 54; and Wheeler A.
C. L. 223. But, it will be observed, that this was a question
of defence, and not of title in plaintiff. All the cases con-
cur, however they may differ as to the kind of defence al-
lowable, that the plaintiff must first show a prima facie case,
and that must be by showing a property, either general or
special; until that is done, the question of defence cannot
arise.

It remains to be considered, whether the situation of the
plaintiff is different from that of any ordinary trespasser on
the lands of a private person. On this head I confess my
inability to perceive the force of the reasoning of this court
in the case of Massie v. Snelson. The court did not under-
take to say what the law would have been, admitting the
plaintiffs to have been mere tresspassers, but proceed to as-
sert that the *settlers* on the public land are not trespassers,
and consequently allowed the plaintiffs to recover. Now
from the report of that case, I have seen no proof that Mas-
sey and James were settlers on the public lands; on the con-

Persons cut-
ting timber on
the lands of
the U. States
not being ac-
tual settlers,
are mere tres-
passers, and
do not there-
by acquire
any property,
either general
or special, in
the timber.

trary it might be fairly inferred from the testimony that they were owners of a considerable tract of land, and no doubt of the soil on which their iron works and other improvements were located, and merely supplied themselves with wood from the vacant lands adjoining their premises.   I apprehend there is a vast difference between this and settling the public lands.   By the *settlers*, I understand those who locate on the public lands, with a view to a settlement, enclose fields, build cabins, and cultivate the soil, or take some preparatory steps for these purposes.   These *settlers have* undoubtedly been viewed by the federal government in a favorable light, and their improvements have been from time to time secured to them by a series of just and equitable laws, called pre-emption laws.   Their rights have also been repeatedly recognized by this court, and no one is more willing than myself that the protection of the judicial as well as legislative departments of government should be continued over this meritorious class of citizens.

But I am unable to see, what merit can be claimed by him who owning thousands of acres himself, yet prefers to get his firewood and rails, and timber, from the adjoining lands of the government, with no view to their improvement, but to the destruction of all the value which they possess.   The practice I am aware is general, nor do I undertake to say it is morally reprehensive.   It, is not the province of this court to decide questions of ethics, but I imagine the persons who commit these trespasses do not for a moment suppose, that they can claim any *merit* with the government for so doing, or that they can call upon the courts of law to assist them.

Trespassers
on the lands
of the United
States occupy
the same po-
sition with
trespassers on
the lands of
private indi-
viduals.
(James and
Massie v.
Snelson, 3 Mo
R. p. 393,
over ruled.)

I conclude then that the plaintiffs, who trespassed on the lands of the United States, occupy the same position with a trespasser on the lands of his neighbor, and could not, by such trespass, acquire any property, either general or special.   The argument *ab inconvenienti*, suggested by the court in the case of Massie vs. Snelson, and urged at the bar in this case, is entitled to no weight in a case like the present.   Whatever inconvenience may result from the law, as it now stands, it is the province of the Legislature to remedy.   In-

finitely greater danger must result to our rights of proper-
ty by the incroachment of the judicial tribunals upon the
precincts of the legislative department, than can possibly
ensue from the expected scuffle among the trespassers on
the public lands.

But these results are not likely to arise. Whenever there
is an actual settlement, or the preparatory steps with a view
to settlement, it is clear that the principle of this case can
have no application. When such a case occurs it will be
time enough to investigate that matter. No pretence is made
here that the plaintiffs had any such designs, and no proof
of any actual possession, distinguished from that construc-
tive possession which property, either general or special, can
give. But the facts disclosed in the testimony on record,
present a practical commentary upon the great *inconveni-
ence* of the doctrine in Massie vs. Snelson. If a person can
acquire property by making rails, or cutting saw logs on
public land, may he not acquire as good a right by merely
felling the trees? When does this right commence and when
does it cease? What will be evidence of abandonment, or
can there be none? If A goes into the neighboring forests,
and by the aid of a hundred hands cuts down the timber for
a mile around, intending to haul them at his convenience to
his mill, or to convert them into rails, at such times as suits
his convenience, how long must his neighbor, B, wait before
he can undertake to make use of the fallen timber? Even
according to the customs of the country, so often alluded to
at the bar, and whi h this court is desired to engraft into the
common law of the land, such practices are not considered
admissible, or as giving any title in the trespasser. It is
held equitable, and with some propriety, that a man must
*cut and split* as he goes, if his object be rails, or if saw logs,
he must cut down and cut up the trees in proper lengths, in
order to give him a lien. But according to the doctrine now
sought to be established, the trespasser may destroy the tim-
ber for miles around, perhaps without any means of availing
himself of it before it will be rotten and useless, whilst his
neighbors are utterly deprived of the benefit of participa-
tion, and obliged to haul their firewood, rails or saw logs,

SEPT. TERM
1840.

R. & A. P.
Turley
v.
Tucker.

from a distance of several miles over the very lands which the first trespasser has made bare. The truth is, when we leave the established landmarks of the law we are completely at sea, and it will be left to the moral sense of each judge or jury to decide these nice questions of honor and equity.

To allow a recovery in this case would, in my opinion, be subversive of the well established and long settled principles of law, which, whether wise or unwise, this court is bound to administer. Judgment reversed.

Judge McGirk dissenting.