## JAMES HIGGINS v. CHRISTOPHER KUSTERER.

*Ice is personalty.*

The original title to ice is in the possessor of the water where it is formed, and passes with such possession.

Any sale by itself of ice already formed, whether in or out of the water at the time, is a sale of personalty.

Case made from Kent. Submitted June 19. Decided July 1.

REPLEVIN. Plaintiff recovered below.

*Ballard & Maynard* for plaintiff. Water is not land

or a tenement and is governed by different rules, 2 Bl. Com., 18; *Race v. Ward*, 4 El. & B., 708; *Challenor v. Thomas*, Yelv., 143; *Mitchell v. Warner*, 5 Conn., 497; a land-owner has no absolute property in a water-course on his land, but his right of property in it comes, as a corporeal hereditament, from his ownership of the soil, *Elliott v. Fitchburg R. R. Co.*, 10 Cush., 193; *Brace v. Yale*, 10 Allen, 443; *Cary v. Daniels*, 5 Met., 238; *Tyler v. Wilkinson*, 4 Mas., 400; Ang. on Watercourses [6 ed.], 9; the statute relating to fraudulent conveyances takes the place in Michigan of the statute of frauds, and its operation is apparently limited to negotiations as to land alone, Browne Stat. Frauds [3d ed.], ch. 1, p. 231, et seq.; *Mayor v. Com'rs*, 10 Penn. St., 348; Ang. on Watercourses, 250; the question whether there can be absolute property in ice is discussed in *Marshall v. Peters*, 12 How. Pr., 218; *Cummings v. Barrett*, 10 Cush., 189; *Mill River v. Smith*, 34 Conn., 462; *Ward v. People*, 6 Hill, 146; *Edgerton v. Huff*, 26 Ind., 35; *State v. Pottmeyer*, 30 Ind., 287 : 33 Ind., 402; *West Roxbury v. Stoddard*, 7 Allen. 158; *Paine v. Woods*, 108 Mass., 173; *Myer v. Whitaker*, 18 Alb. L. Journal, 128; *Lorman v. Benson*, 8 Mich., 32; and see 1 Washb. R. P. [6 ed.], 4 : 3 id., 342; in Michigan, ice attached to the freehold is the absolute property of the riparian owner, but subject to the public easement, *Lorman v. Benson*, 8 Mich., 32; and a land-owner has exclusive control over a lake that is almost entirely inclosed within the boundaries of his farm, *Marsh v. Colby*, 39 Mich.; ice often assumes the character of real or personal property, according to the circumstances, 1 Washb. R. P., 2; it should be exempted like growing crops from the operation of the statute of frauds, since it belongs rather to *fructus industriales* than to *fructus naturales*; products of the first class being without, and those of the second within the statute, 1 Chitty Cont. [11 Am. ed.], 417; Ewell on Fixtures, 266–9; but contracts for the sale of natural products are held to relate to realty or personalty according to their principal

subject matter, and the intent of the parties, 1 Greenl. Ev., § 271; and all contracts for fruits and products of the earth, ripe and ready for delivery to the vendee are outside the statute, *Cutler v. Pope*, 13 Me., 379; *Parker v. Staniland*, 11 East, 362; 2 Taylor's Ev., § 952; 1 Greenl. Ev., 305; 2 Whart. Ev., § 867; 1 Chitty Cont., 417; so are all contracts by which the products of the earth are sold specifically, and the buyer is to receive a mere chattel, though meanwhile part of the realty, and are unripe at the time of making the contract, *Purner v. Piercy*, 40 Md., 224; Browne Stat. Frauds, §§ 236–7; 247, 249; 3 Phil. Ev., 250; parol contracts for the sale of trees are enforced where they are being raised in a nursery to be sold or transplanted, *Miller v. Baker*, 1 Met., 32; *Whitmarsh v. Walker*, id., 313; *Penton v. Robart*, 2 East, 88; *Owens v. Lewis*, 46 Ind., 502; Williams on Executors, 614; 1 Redf. Wills, 152; 2 Bl. Com., 389; Shouler Pers. Prop., 123; or where their immediate severance is proposed, *Hallen v. Runder*, 1 C. M. & R., 266; *Lee v. Gaskell*, L. R. 1 Q. B. Div., 700; *Marshall v. Green*, L. R. 1 C. P. Div., 35; *Claflin v. Carpenter*, 4 Met., 580; *Cook v. Stearns*, 11 Mass., 537; *Mumford v. Whitney*, 15 Wend., 389; *Byassee v. Reese*, 4 Met. (Ky.), 372; *Cain v. McGuire*, 13 B. Monr., 340; *Erskine v. Plummer*, 7 Greenl., 447; *Huff v. McCauley*, 53 Penn. St., 206; *Pattison's Appeal*, 61 id., 294; *McClintock's Appeal*, 71 id., 365; Browne Stat. of Frauds, § 237; 3 Washb. R. P., 343; or where growing trees are treated as timber and the vendee is to obtain title when they are cut, *Smith v. Surman*, 9 B. & C., 568; *Rodwell v. Phillips*, 9 M. & W., 505; *Washburn v. Burrows*, 16 L. J. Exch., 266: 1 Exch., 115; 1 Addison on Cont. [3d Am. ed.], 303; Cooley on Torts, 307; if contracts for things appurtenant to the soil, as fixtures, fences, and manure, which generally pass with the land, treat the subject matter as personalty, they are valid, even although it was incorporated with the soil and formed part of the realty when the contract was made, *Strong v. Doyle*, 110 Mass., 92;

*Noble v. Sylvester*, 42 Vt., 146; *Ropps v. Barker*, 4 Pick., 239; *Ford v. Cobb*, 20 N. Y., 344.

*Charles J. Potter and Turner & Smith* for defendant. Land comprises any ground, soil or earth whatsoever, as arable, meadows, pastures, woods, moors, waters, marshes, furzes and heath, 1 Co. Inst., 4, and everything under and over the earth, as mines and houses, 2 Bl. Com., 18; the owner of land has a mere usufruct right and no absolute property in water flowing over it, Washb. Easements, 286–7, though he has in water in ponds, wells, springs, cisterns, etc., id., 280, 321; aquatic rights enjoyed by those who do not own the soil are easements, id., 4; 3 Kent's Com., 427; the right to water in wells and cisterns is an interest in lands or a right to profit *a prendre*, *Hill v. Lord*, 48 Me., 100; see Washb. Easements, 12; *Manning v. Wasdale*, 5 A. & E., 758; *Race v. Ward*, 4 El. & B., 702; ice when formed is an accession to the soil and part of the realty, *State v. Pottmeyer*, 33 Ind., 402: 30 Ind., 287; a contract for ice at so much a ton or cake, would be good as it would be a sale of personalty, *Smith v. Surman*, 9 B. & C., 561; Benj. Sales, §§ 118–126, n. *y.*; a right to take a profit in the soil goes with the right to enter on another's land to cut grass, Vin. Ab., tit. Prescription; for pasturage, Cro. Eliz., 180, 363; hunting and taking away the game, *Pickering v. Noyes*, 4 B. & C., 639; *Wickham v. Hawker*, 7 M. & W., 63; fishing, *Waters v. Lilley*, 4 Pick., 145; Washb. Easements, 531; taking away sand drifted on to the beach, *Blewett v. Tregonning*, 3 Ad. & El., 554; *Perley v. Langley*, 7 N. H., 233; taking seaweed, *Hill v. Lord*, 48 Me., 100; piling wood and lumber, *Littlefield v. Maxwell*, 31 Me., 134; a right to seek, mine and dispose of metals in the grantor's land, is an incorporeal right, *Doe v. Wood*, 2 B. & Ald., 724; a right to take coals is incorporeal and cannot be created except by grant or prescription, *Huff v. McCauley*, 53 Penn. St., 206; a sale of standing timber to be cut by

the purchaser conveys an interest in land within the meaning of the statute of frauds, *Russell v. Myers*, 32 Mich., 522; *Green v. Armstrong*, 1 Den., 550; *Buck v. Pickwell*, 27 Vt., 157; *Harrell v. Miller*, 35 Miss., 700; *Giles v. Simonds*, 15 Gray, 444; *Whitmarsh v. Walker*, 1 Met., 316; *White v. Foster*, 102 Mass., 375; *Poor v. Oakman*, 104 Mass., 316; *Howe v. Batchelder*, 49 N. H., 204; *Kingsley v. Holbrook*, 45 N. H., 313; *Owens v. Lewis*, 46 Ind., 488; *Bank of Lansingburg v. Crary*, 1 Barb., 543; *Warren v. Leland*, 2 Barb., 613; *Pierrepont v. Barnard*, 5 id., 371; *Silvernail v. Cole*, 12 id., 685; *Bennett v. Scutt*, 18 id., 347; *McGregor v. Brown*, 10 N. Y., 118; *Killmore v. Howlett*, 48 N. Y., 569; *Slocum v. Seymour*, 36 N. J., 138; sea-weed cast up by the waves is an accession, and belongs to the owner of the land, *Emans v. Turnbull*, 2 Johns., 313; *Phillips v. Rhodes*, 7 Met., 323; *fructus industriales* go to the executor, but material products to the heir, *Evans v. Roberts*, 5 B. & C., 836; Benj. Sales, §§ 120–127; the fish in a fish pond belong to the heir, Owen, 20; sales of growing grass are within the statute of frauds, *Crosby v. Wadsworth*, 6 East, 602; *Waddington v. Bristow*, 2 B. & P., 452; *Washbourn v. Burrows*, 1 Ex. 107; *Carrington v. Roots*, 2 M. & W., 248; and fruits on trees, *Rodwell v. Phillips*, 9 M. & W., 502; and standing underwood, *Scorell v. Boxall*, 1 Young & J., 396; and growing poles, *Teal v. Auty*, 2 Brod. & Bing., 101; a grant of uncut ice is more than a license to remove it, *Wood v. Leadbitter*, 13 M. & W., 838.

CAMPBELL, C. J. Higgins recovered below a judgment against Kusterer for the value of a quantity of ice. Kusterer claims that title never passed to Higgins, and that the property was lawfuly acquired by himself from one Loder, who cut it on a pond belonging to one Coats and sold it to defendant.

The facts are briefly these: The ice in question was formed upon water which had spread over a spot of low

ground partly belonging to Hendrick Coats, forming a basin, the land being dry in summer, and the rest of the year overflowed from a small brook leading into it. After the ice formed, and in February, 1878, Coats by a parol bargain sold all the ice in his part of the basin to Higgins, for fifty cents. The parties at the time stood near by in view of the ice, and the quantity sold was pointed out, and the money paid. The ice was then all uncut.

About two weeks thereafter John Loder, knowing that Higgins had purchased and claimed the ice, and having been warned thereof by Coats, offered Coats five dollars for the ice, which Coats accepted, and Loder cut it, and sold it to Kusterer who had made a previous verbal contract with Loder for it. Higgins was present when the ice was loaded on Kusterer's sleigh and forbade the loading and removal on the ground that he had purchased it from Coats. Kusterer referred the matter to Coats who said he had sold it to Loder.

The only question presented is whether Higgins was owner of the ice.

The case was argued very ably and very fully, and the whole subject of the nature of ice as property was discussed in all its bearings. We do not, however, propose to consider any question not arising in the case.

The record is free from any complications which might arise under other circumstances. There are no conflicting purchasers in good faith without notice. Loder and Kusterer had full notice of the claims of Higgins before they expended any money. The sale to Higgins was not a sale of such ice as might from time to time be formed on the pond, but of ice which was there already, and which if not cut would disappear with the coming of mild weather and have no further existence. It was not like crops or fruit connected with the soil by roots or trees through which they gained nourishment before maturity. It was only the product of running water, a portion of which became fixed by freezing,

and if not removed in that condition would lose its identity by melting. In its frozen condition it drew nothing from the land, and got no more support from it than a log floating on the water would have had.

Its only value consisted in its disposable quality as capable of removal from the water while solid, and of storage where it might be kept in its solid state, which could not be preserved without such removal. If left where it was formed it would disappear entirely.

While we think there can be no doubt that the original title to ice must be in the possessor of the water where it is formed, and while it would pass with that possession, yet it seems absurd to hold that a product which can have no use or value except as it is taken away from the water, and which may at any time be removed from the freehold by the moving of the water, or lose existence entirely by melting, should be classed as realty instead of personalty when the owner of the freehold choses to sell it by itself. When once severed no skill can join it again to the realty. It has no more organic connection with the estate than anything else has that floats upon the water. Any breakage may sweep it down the stream and thus cut off the property of the freeholder. It has less permanence than any crop that is raised upon the land, and its detention in any particular spot is liable to be broken by many accidents. It must be gathered while fixed in place or not at all, and can only be kept in existence by cold weather. In the present case, the peculiar situation of the pond rendered it likely that the ice could not float away until nearly destroyed, but it could not be preserved from the other risks and incidents of its precarious existence. Any storm or shock might in a moment convert it into floating masses which no ingenuity of black-letter metaphysics could annex to the freehold.

It does not seem to us that it would be profitable to attempt to determine such a case as the present by applying the inconsistent and sometimes almost whimsi-

cal rules that have been devised concerning the legal character of crops and emblements. Ice has not been much dealt with as property until very modern times, and no settled body of legal rules has been agreed upon concerning it. So far as the principles of the common law go, they usually if not universally treated nothing movable as realty unless either permanently or organically connected with the land. The tendency of modern authority, especially in regard to fixtures, has been to treat such property according to its purposes and uses as far as possible.

The ephemeral character of ice renders it incapable of any permanent or beneficial use as part of the soil, and it is only valuable when removed from its original place. Its connection,—if its position in the water can be called a connection,—is neither organic nor lasting. Its removal or disappearance can take nothing from the land. It can only be used and sold as personalty, and its only use tends to its immediate destruction. We think that it should be dealt with in law according to its uses in fact, and that any sale of ice ready formed, as a distinct commodity, should be held a sale of personalty, whether in the water or out of the water.

We shall not attempt to discuss cases where the bargain includes future uses of land and water, and interests in ice not yet frozen. Whether such dealings are to be regarded as leases or licenses, or executory sales, may be properly discussed when they occur. We think the sale in the present case was rightly held to be a sale of personalty.

The judgment must be affirmed, with costs.

The other Justices concurred.