# JANUARY TERM, 1882.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, ⎫ Associate Justices.
Hon. DAVID J. BREWER, ⎬
                        ⎭

ROBERT W. WOOD, *et al.*, v. ROBERT A. FOWLER, *et al.*

1. COURTS; *Judicial Notice.* Courts will take judicial notice of the navigability of large rivers.

2. TITLE OF RIPARIAN OWNER; *Ch. 92, Laws of 1864.* Chapter 92, Laws of 1864, which declared the Kansas a non-navigable river, by implication recognized the fact that theretofore it had been a navigable river, and did not have the effect to extend the title of the riparian owner from the bank to the center of the stream.

3. RIPARIAN OWNER, *Title of.* A riparian owner owns only to the bank and not to the center of a navigable stream.

4. ICE; *Title of Riparian Owner.* A riparian owner along a navigable stream does not own the ice which is formed on the stream adjacent to his land, and, without first taking possession of and securing it, may not maintain an injunction to restrain a stranger from cutting and removing it.

*Error from Wyandotte District Court.*

ACTION brought by *Robert W. Wood* and another, against *Robert O. Fowler* and three others, to restrain defendants from cutting and removing any ice that may be formed upon the surface of the Kansas river within certain described boundaries. Trial at the April Term, 1881, of the district court, and judgment for the defendants. The plaintiffs bring the case here. The opinion states the facts.

*John K. Cravens,* for plaintiffs in error:

1. Matthias Splitlog, as the owner of the land described in the petition, owned the waters of the river to the middle

of the main channel, (Angell on Watercourses, §§ 10, 95,) and by the lease made by him to plaintiffs, the frontage of the land and the waters were conveyed to them for the period of ten years. The ice which formed upon the surface of the waters was the property of the plaintiffs. (*Meyer v. Whittaker*, 18 Alb. L. J. 128 ; *Mill River Co. v. Smith*, 34 Conn. 462; *Higgins v. Kusterer*, 9 Cent. L. J. 247; *People's Ice Co. v. The Excelsior*, 11 id. 347.)

2. Plaintiffs at great expense have constructed ice-houses on the banks of the river contiguous to the Splitlog land, and have established a business as ice-packers and dealers at a great commercial center ; the crop of ice which forms upon the Splitlog waters is essential to the prosecution of their business. The grievance complained of is one which may be, and likely will be, repeated annually. Plaintiffs are damaged not only to the extent of the value of the ice taken by defendants from the waters mentioned, but they also lose the use of their ice-houses, and are interrupted in the prosecution of their business. Injunction is the proper remedy in this case, and it should be granted to plaintiffs. (20 Alb. L. J. 649 ; 71 Mo. 199; 65 id. 682; 45 id. 561; 2 Story's Equity Jur., §§ 928–9.) As to what constitutes irreparable damage, see 69 Mo. 71; 24 Pa. St. 160; 11 Kas. 186 ; 20 id. 47; 5 Wall. 74.

*Leland J. Webb*, for defendants in error:

The only question presented by the record is, whether the petition does state facts sufficient to authorize the relief demanded. There is no allegation therein that the defendants are insolvent, and from aught that appears the plaintiffs have an adequate remedy at law. The acts complained of are trespasses, and in such cases where there is an adequate remedy at law, injunction will not lie. (High on Injunctions, §§ 459, 483, and cases cited; also §§ 460, 461; 2 Iowa, 496; 11 id. 523.)

It is true that the petition alleges ownership of the fee to the center of the river by Splitlog, and possession and the

exclusive right to take the ice up to that line by plaintiffs. But the court will take judicial notice of the survey and disposal of the land described, by the government of the United States. Courts will take judicial notice of whatever ought to be generally known within their jurisdiction. (1 Gr. Ev., 13th ed., § 6.) Navigable rivers only are meandered. (Lester's Land Laws, p. 714.) The Kansas river is meandered; the survey ran only to the river bank. (Field notes and plat of township 11, south, range 25, east, in state auditor's office.) The court will take judicial notice of the location of the city of Wyandotte, and that it is in the township above described. The grantee of the government obtained no title to the river-bed. Splitlog took the land as surveyed. The river belongs to the public, and the legislature of this state has so recognized it. (Laws 1857, pp. 166, 167.) One of the tests of navigability is public acts and declarations. Indeed, this is the most unfailing test to apply in order to ascertain a common right. (*McManus v. Carmichael*, 3 Iowa, 1.) This case contains a full and able review of the law applicable to the case under consideration.

There is no allegation in the petition that the river is not in fact navigable; but if it had been so alleged, the public records and the legislative enactments of this state control, and the courts are bound by these records and acts.

It follows, then, that the plaintiffs have no better or greater rights than the defendants, so far as taking ice from the river is concerned. The stream is a public highway, and no one can maintain an exclusive privilege to any part of the water. (Angell on Watercourses, § 65; *Musser v. Hershey*, 42 Iowa, 356.) The plaintiffs have no other rights than those acquired by the patentee from the government; and those rights are fixed and bounded by the survey, plat, and field notes. The river bank is the boundary, and beyond this the patentee had no interests except those in common with the public. The owner of land adjoining a public river may use the water for all purposes necessary to the full enjoyment of the land, but has no right to appropriate the water for purposes of specu-

lation. (*Weaver v. Eureka,* 15 Cal. 271.) The taking of the
ice by the defendants was a matter between them and the pub-
lic. No rights of the plaintiffs were violated or interfered
with.

The opinion of the court was delivered by

BREWER, J.: This is a petition for an injunction. A de-
murrer thereto was sustained in the district court, and the
plaintiffs bring the case here for review. The petition al-
leges substantially that on the 20th of January, 1880, one
Matthias Splitlog was the owner and had the exclusive pos-
session of a tract of land in the neighborhood of Kansas City
and Wyandotte, and bordering on the Kansas river and ex-
tending to the middle of the channel; that he then leased
said tract to these plaintiffs for ten years, and placed them in
the same exclusive possession; that these plaintiffs are ice
dealers, engaged in gathering ice, and that they have erected
ice-houses on the banks of the Kansas river and in close
proximity to this tract of land, for the storage and preserva-
tion of ice in great quantities; that merchantable ice is a
commodity of great value, and the value thereof greatly en-
hanced, as it can be gathered in close proximity to the market;
that the cities of Kansas City and Wyandotte furnish a good
market for the sale of ice to consumers, as well as for export
trade; and that merchantable ice of superior quality formed
upon the surface of said Kansas river within the limits of said
premises, which adhered to the banks of the stream and ex-
tended therefrom to the center of the channel. The petition
contained further allegations that the defendants were enter-
ing the premises and removing the ice, and other facts show-
ing that the plaintiffs were entitled to an injunction if they
were the owners of the ice, or if they had such an interest
therein that they could prevent any removal of it.

The question then is fairly presented as to the extent of the
interest which a riparian owner has in the ice formed adjacent
to his property. The petition alleges ownership and posses-
sion to the center of the channel; but the defendants insist

that this allegation must be disregarded, because the Kansas is a navigable stream, and that the owner of the adjacent soil in such case only owns to the bank, and not to the center of the stream; that this court is bound to take judicial notice of such fact—the official records of United States surveys showing that the stream was meandered, and its navigability being also indicated by early Kansas legislation and its actual navigation a fact of early Kansas history. We think the claim of the defendants is correct—that the court is bound to take judicial notice of the navigability of the stream. Limits of judicial knowledge are perhaps not strictly defined. Greenleaf in his work on Evidence, vol. I., §6, sums it up in these words: "In fine, courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction." In a note thereto, he adds: "There is not much consistency in the cases, and possibly this may result from the fact that different judges may assume that what is or is not known to them, is or is not generally known." Returning to the cases, we find many that tend with more or less directness to sustain the conclusion we have arrived at. A reference to some may not be inappropriate.

1. Courts; judicial notice.

In the *Rld. Co. v. More*, 16 Ind. 43, in a suit against a railroad company for damages, it was proved that the accident happened at a certain locality, but it was not proved that such locality was within the limits of the county, and the court took judicial notice of the limits of the county, and of the fact that such place proved was within its limits. See also *Rld. Co. v. Case*, 15 Ind. 42. In the *Lake Co. v. Young*, 40 N. H. 420, it was held that courts take notice of the civil divisions of the state, such as counties and townships, and of its great geographical features, as of large lakes, rivers, and mountains. In *Atwater v. Schenck*, 9 Wis. 160, it was ruled that judicial notice would be taken of the government surveys and the legal subdivisions of public lands. In *Montgomery v. Plank Road Co.*, 31 Ala. 76, the court took judicial notice that no part of the Tallapoosa river was within the

corporate limits of the city of Montgomery. See also *Lewis v. Harris*, 31 Ala. 69. In "The Peterhoff," Blatchford's Prize Cases, 463, it was held that the court will take judicial notice of the situation of a town in a foreign country, and that a bar exists at the mouth of the river at which it lies, which vessels of the draught of the vessel libeled cannot cross. In *Mossman v. Forrest*, 27 Ind. 233, it was ruled that courts will take judicial notice of the permanent geographical facts and features of the country. See also *Rld. Co. v. Stevens*, 28 Ind. 429; *Wright v. Hawkins*, 28 Tex. 452. In *Buchanan v. Whitam*, 35 Ind. 257, it was held that the court will take judicial notice that the lands in Ripley county were surveyed and laid out by an act of congress, and that their sides were east, west, north, and south, and that there can be no such description of, or in relation to, a congressional survey of them as the southeast side of a quarter-section. In 1 Greenleaf on Evidence, § 6, the author, citing several cases, says: "The courts of the United States, moreover, take judicial notice of the ports and waters of the United States in which the tide ebbs and flows." And further, the exact question in this case came before the supreme court of Indiana in *Naederhauser v. The State*, 28 Ind. 257, and there the court, after a full consideration, held that courts will take judicial notice of the navigability of streams, at least so far as the great rivers are concerned. See also *McManus v. Carmichael*, 3 Iowa, 1. Indeed, it would seem absurd to require evidence as to that which every man of common information must know. To attempt to prove that the Mississippi or the Missouri is a navigable stream, would seem an insult to the intelligence of the court. The presumption of general knowledge weakens as we pass to smaller and less-known streams; and yet, within the limits of any state the navigability of its largest rivers ought to be generally known, and the courts may properly assume it to be a matter of general knowledge, and take judicial notice thereof; and in taking judicial notice, we know that the Kansas is the largest river wholly within the limits of the state; that it has been recog-

nized as the prominent geographical feature dividing the state into northern and southern Kansas; that in early territorial history it was in fact navigated, a few steamboats going up and down its waters; and that its volume of water is such that in its natural condition it is capable of being used for purposes of navigation, and so coming within the recognized definition in this country of a navigable stream. (*The Montello*, 20 Wall. 430; *Booming Co. v. Speechly*, 31 Mich. 336.) We know that the lines of the United States surveys do not cross the channel, but that the stream was meandered. (Lester's Land Laws, p. 714.) We find among the territorial statutes, (Laws 1857, pp. 166–7,) two charters of navigation companies incorporated to engage in the business of navigating the Kansas. It is true in 1864, (Laws 1864, p. 180,) an act was passed by the state legislature declaring the Kansas and certain other rivers not navigable; but the plain implication of the act is that the streams had theretofore been considered navigable, and its purpose was to sanction the bridging and damming of such streams. It certainly was not the purpose, and the act had not the effect, to enlarge the title of the riparian owners, or to recognize them as possessed of higher rights than heretofore. Indeed, where title is once vested, a mere change in the condition or character of the current or the uses to which the stream is put, will not transfer any title. (*People v. Tibbets*, 19 N. Y. 527; *Wheeler v. Spinola*, 54 N. Y. 377.) It was an assertion of state control over a stream wholly within its territorial limits; a control which, notwithstanding the general supremacy of the federal government over navigable streams, was asserted to exist in the state in the case of *Naederhauser v. The State*, 28 Ind., *supra*, as well as in many other authorities. So that for all the purposes of this case, and any question in it, we may assume that the Kansas is, at the point in controversy, a navigable stream. The stream having been meandered, the lines of the surveys are bounded by the bank; the patents from the United States passed title only to the bank; Splitlog, as riparian owner, owned only to

2. Title of riparian owner; ch. 92, Laws of 1864.

the bank. The title to the bed of the stream is in the State. (*Stevens v. Rld. Co.*, 34 N. J. Law, 532; *Pollard's Lessee v. Hagan*, 3 How. U. S. 212.) It is true a distinction was recognized in England, and that streams were considered navigable only in so far as they partook of the sea, and to the extent that their waters were affected by the ebb and flow of the tide, and only so far was the title of the riparian owner limited to the bank; above such point, even although the stream was large enough to be used, and in fact was used, for purposes of navigation, the riparian owner owned the soil *ad medium filum aquæ*. So that really three distinct characters of streams were recognized: First, those smaller streams, which could not be used for any purpose of navigation, in which the title to the soil was in the riparian owner, and along which the public had no rights of highway or otherwise; an intermediate class, in which the riparian owner owned to the middle of the channel, but along whose stream the public had all the rights of a highway; and third, that which was called technically the navigable streams, where the title to the bed of the stream was in the sovereign, and all rights were in the public. The same doctrine of riparian ownership to the center of the stream in all rivers unaffected by the ebb and flow of the tide, is recognized in some states of the Union; but the better and more generally accepted rule in this country is, to apply the term "navigable" to all the streams which are in fact navigable; and in such case to limit the title of the riparian owner to the bank of the stream. Especially is this true in the states where the lands have been surveyed and patented under the federal law. See the following authorities: *Rld. Co. v. Schurmeir*, 7 Wall. 272; *McManus v. Carmichael*, 3 Iowa, 1; *Haight v. Keokuk*, 4 Iowa, 199; *Tombden v. Rld. Co.*, 32 Iowa, 106; *Flannigan v. City of Philadelphia*, 42 Pa. St. 219; *Bridge Co. v. Kirke*, 46 Pa. St. 112; *People v. Tibbets*, 19 N. Y. 523; *People v. Loomis*, 33 N. Y. 461. These conclusions seem to compel an affirmance of the judgment of the district court; for whatever might be the case where a riparian owner owns to the

44—26 KAS.

center of the channel, and whatever ownership and control he may have over the ice which forms upon the stream upon his premises, (and as to the extent of his rights, see the following authorities: *State v. Pottmeyer*, 33 Ind. 402, also reported in 5 American Reporter, 224; *Mill River Co. v. Smith*, 34 Conn. 462; *Marshall v. Peters*, 12 How. Pr. 218; *Meyer v. Whittaker*, 18 Alb. L. J. 128; 4 Cent. L. J. 500; 7 Cent. L. J. 141; *Higgins v. Kusterer*, 41 Mich. 318, reported in 9 Cent. L. J. 247; *People's Ice Co. v. The Excelsior*, 11 Cent. L. J. 347; *Paine v. Wood*, 108 Mass. 173; *Gage v. Stumphaus*, Sup. Ct. Mass., reported in 24 Alb. L. J. 516; *Washington Ice Co. v. Shortall*, Ill. Sup. Ct., 13 Rep. 9,) it would seem that where there is no ownership of the subjacent soil, a riparian proprietor has no title to the ice. The title to the soil being in the state, and the stream being a public highway, obviously the ownership of the ice would rest in the general public, or in the state as the representative of that public. The riparian proprietor would have no more title to the ice than he would to the fish. It simply is this, that his land joins the land of the state. The fact that it so joins, gives him no title to that land, or to anything formed or grown upon it, any more than it does to anything formed or grown or found upon the land of any individual neighbor. Undoubtedly, in view of the importance that ice is rapidly assuming as a merchantable commodity, it would be wise for the state to legislate in reference to the ice product of the navigable streams; but until such legislation is had,

4. Ice; title of riparian owner.

it would seem that the one who first appropriates and secures the ice which is formed is entitled to it, and on the same principle that he who catches a fish in one of those rivers owns it. (*Hickey v. Hazard*, 3 Mo. App. 480; *Gage v. Steinkrans* and *Rowell v. Doyle*, Mass. Sup. Ct., 25 Alb. L. J. 23.)

There being no other questions in the case, the judgment of the district court will be affirmed.

All the Justices concurring.