OLIVER BROWN, Appellant, v. W. A. CUNNINGHAM, Appellee.

1. **Practice:** REVERSAL OF RULING ON DEMURRER AFTER TRIAL. A demurrer to the plaintiff's petition upon the ground that the facts alleged did not entitle the plaintiff to the relief demanded, having been overruled, issue was joined and a trial had, and, after the plaintiff had introduced evidence sustaining the allegations of his petition, the court, upon the motion of the defendant, instructed the jury to return a verdict for the defendant, upon the ground that the facts proven did not entitle the plaintiff to recover. *Held,* that no rights having been acquired under the ruling upon the demurrer, it was not binding upon the court, if convinced upon the final hearing that its ruling was erroneous.

2. **Injunction Bond:** BREACH OF: NOMINAL DAMAGES. Where, in an action upon an injunction bond, a breach thereof is established, the plaintiff is entitled to recover at least nominal damages, though the evidence fails to show that he suffered any special injury through the operation of the injunction.

3. **Riparian Rights:** NON-NAVIGABLE STREAM IN GOVERNMENT SURVEY: ICE: INJUNCTION BOND: DAMAGES. The plaintiff, though not a riparian owner, entered upon a non-navigable stream, running through the government survey of public lands, and cut and put in an icehouse a large quantity of ice, and had cut and made preparations for removing other ice therefrom, when he was enjoined from so doing by the defendant, who claimed title to the ice by reason of his riparian ownership. It was not shown that the plaintiff was a trespasser upon the lands of the riparian owners, nor that he did not rightfully obtain access to the river. *Held,* that the title to the bed of the stream being in the United States, the riparian owners had no interest in the ice found upon the stream ; that the plaintiff had a right to remove ice therefrom, and being entitled to the ice he had prepared for removal, but was prevented from so doing by the injunction issued at the instance of the defendant, the latter was liable in damages for breach of the injunction bond.

*Appeal from Jones District Court.*—HON. J. H. PRESTON, Judge.

THURSDAY, MAY 21, 1891.

THIS is an action upon an injunction bond given to the plaintiff and others. A verdict was had for the

defendant under the direction of the court, and a judgment rendered thereon, from which the plaintiff appeals. *Reversed.*

*E. Keeler, C. M. Brown* and *Sheehan & McCarn,* for appellant.

*J. W. Jamison,* for appellee.

BECK, C. J.—I. The plaintiff and another were engaged in cutting and putting up ice obtained in the Wapsepinecon river, not a navigable stream, but meandered in the government surveys of the public lands, and, therefore, its bed was never disposed of by the government by sales of the adjacent lands. It does not appear that the government ever transferred in any manner the bed of the river. The plaintiff and his business associate, not being the riparian owners, entered upon the river and cut and put in an icehouse a large quantity of ice, and cut and made preparations for moving other ice to their icehouse. It is not claimed or shown that they were trespassers upon the lands of the riparian owners, or that they did not rightfully and lawfully obtain access to the river. The defendant in this suit brought an action to enjoin the plaintiff and his associate from gathering the ice, on the ground that he was the owner of the ice. This claim of ownership, we gather from the abstract and arguments, was based upon the fact that he was the riparian owner, and his rights as such extended to and covered the ice in the stream. The cause was tried on the merits, and a decree entered dismissing the petition and dissolving the injunction.

1. PRACTICE: reversal of ruling on demurrer after trial.

The plaintiff herein has acquired all rights in the subject of litigation held by his associate. The defendant demurred to the plaintiff's petition on the ground that the facts stated do not entitle the plaintiff to relief; that the petition fails to show that the plaintiff had any special right to cut the ice other than what is

possessed by the public generally, or that he owned the land adjacent to the river at the locality where the ice was cut; and that he acquired no right to the ice by cutting the same. The demurrer was overruled, the defendant excepting; but he afterwards pleaded over by answer denying the allegations of the petition. The cause was submitted upon the evidence of the plaintiff establishing the facts as we have stated them. Thereupon the court instructed the jury to return a verdict for the defendant, holding that upon the undisputed facts the plaintiff could not recover.

II. Counsel for the plaintiff think that, as the defendant did not stand upon his demurrer, the decision thereon was conclusive in this case, and that the district court erred in not holding that the facts proved, which conformed to the allegations of the petition, entitled the plaintiff to recover; that a contrary holding conflicts with the decision on the demurrer, which should be regarded as the law of the case. We think that a court is not bound by a prior decision in a case where no rights have been acquired under it, and may change, modify or overrule it if convinced of its error. Decisions are not to be regarded as unalterable without regard to their correctness. However desirable it may be to have consistency in the decisions of a court in the same case, it is better that the court correct its errors, if in its judgment any have occurred. In this case we shall presume the court below declined to follow the ruling on the demurrer. That ruling will not be regarded as conclusive. *Jenkins v. Shields*, 36 Iowa, 526; *Standish v. Dow*, 21 Iowa, 363; *Norton v. Knapp*, 64 Iowa, 112. This rule is applicable when different judges make successive rulings in a case. The last judge making a ruling ought not to be bound by a prior ruling of another judge when he would not be bound by the prior ruling had he made it himself. It is here that courtesy would appear to require the second judge to conform his views to those of the first. But justice may demand quite the contrary, and its demands must overcome the requirements of courtesy.

III. If the facts alleged in the petition do not entitle the plaintiff to recover, the defendant may demur ( Code, sec. 2648, par. 5 ), or move in arrest of judgment ( Code, sec. 2650 ; *Smith v. Railroad*, 59 Iowa, 75 ; *Edgerly v. Ins. Co.*, 43 Iowa, 587 ) ; and when the allegations of the petition are supported by proof, but do not constitute a cause of action, it is competent for the court to instruct the jury that the plaintiff cannot recover. *Seaton v. Hinneman*, 50 Iowa, 395. We are advised of no rule prevailing in this state which will authorize a judgment on petition and proof which shows no legal liability, on the ground that a demurrer to the petition was overruled, and the defendant answered over, denying the allegations of the petition. This is the point presented in the case.

IV. We are to determine whether, upon the facts we have recited, the defendant is liable upon the injunction bond. It very clearly appears that, as there was a breach of the bond which is not disputed, the plaintiff is entitled to at least nominal damages, though he suffered no special injury from being deprived of the ice, for the reason that he had no right to it. The question of the plaintiff's right to recover at least nominal damages should have been submitted to the jury.

*2. INJUNCTION bond: breach of: nominal damages.*

V. But in our opinion, upon the facts in the case above recited, the plaintiff did have a right to, and property in, the ice he had prepared to remove, and a property right to obtain ice out of the stream pursuant to the plan upon which he was working. The river, while not navigable, was meandered in the government survey. The bed of the stream—the land—never passed out of the proprietorship of the United States government, and the riparian owners had no right or interest therein, and, therefore, had no exclusive rights to the ice found upon the stream. In support of this position, see *Serrin v. Grefe*, 67 Iowa, 197.

*3. RIPARIAN rights: non-navigable stream in government survey: ice: injunction bond: damages.*

VI. The United States retains the title to the bed of the stream, which it holds, not for disposition nor for use in any way that will interfere with the rights of the riparian owners and the public to the water of the stream, and its uses for all proper purposes. It cannot be claimed that the government can prevent riparian owners from using the water to evolve power for mechanical purposes, for domestic use, for supplying towns and cities, and for all the purposes for which water may be lawfully used. Of course, such use must be so limited and restricted that the rights of riparian owners and of all others holding rights to the water shall not be interfered with. It cannot be thought that the government has the power or authority to divert the stream, dry up the water, or so contaminate it that it could not be used for proper purposes. The government has no more property in the water than a riparian owner or the public. The beneficent Creator opened the fountains which filled the stream for the benefit of his creatures, and has bestowed no power upon man or governments created by man to defeat his beneficence. Of course, the use of the water may be regulated by the state, but the state may not forbid its use to the people. As streams of water begin *ex jure naturæ*, they are subject, as to course and use, only to nature's laws. The maxim of the common law intended to protect all people in the enjoyment of nature's water-courses, namely, "*aqua currit et debet currere ut currere solebat*," is as obligatory upon the government as upon the citizens. Under this maxim there can be no restriction upon the use and enjoyment of water when flowing in nature's stream. Whoever has lawful access to the stream flowing over a bed owned by the government, and held in trust for the benefit of the people, may use the water as regulated by law. In the case before us it is not shown nor claimed that the plaintiff did not have lawful right to go upon the stream.

It is plain that the same rights to the ice exist which may be held to the water, for the ice is water in another form,—is congealed water. Its uses for comfort,

luxury and health are known and demanded every-
where.   It cannot be doubted that, in accord with
the views we have expressed, any citizen who may
lawfully go upon the stream may gather ice from it
under the regulations prescribed by law.   He is entitled
to the ice he prepares by his labor to be removed.   It is
plain that, if he cuts ice for transportation to his
icehouse, another cannot rob him of his labors by
carrying away his ice; and it is plain that when he
makes preparations to use the ice upon a certain part
of the stream, prepares its surface for cutting, erects
machinery to handle the ice, makes walks or ways for
workmen, or in any other proper manner indicates the
part of the stream which he occupies in his operations,
which must be reasonable in extent and in all other
respects, he has a property right to the occupation of
such locality during the ice season, and to the ice formed
there.   When men are thrown together without gov-
ernment or established rules to regulate their possessions
and use of the land they occupy, they tacitly assent to
just such rules as follow from the doctrines we have
announced.   This has been done by settlers and miners
in every territory of the Union, as well as in every land
where the ideas of civilized justice, and especially the
Anglo-Saxon ideas of the protection of individual
property, prevail.   Shall not the courts, where there is
established government, recognize, protect and enforce
rights which are instinctively recognized by our people ?
Indeed, courts are established to enforce and protect all
rights held by men not surrendered to the state, thereby
promoting order and peace of the state.   In support of
these views we cite the following authorities : *Wood-
man v. Pitman*, 79 Me. 456 ; 10 Atl. Rep. 321 ; *Ice Co.
v. Steamer Excelsior*, 44 Mich. 229 ; 6 N. W. Rep. 636 ;
38 Amer. Rep. 246, and notes; *Inhabitants of West
Roxbury v. Stoddard*, 7 Allen, 158 ; *Pain v. Woods*,
108 Mass. 160 : Angell, Water-Courses, secs. 74, 93, 135,
536, and notes to each section ; *Hickey v. Hazard*, 3
Mo. App. 480 ; *Wood v. Fowler*, 26 Kan. 682 ; *Brastow
v. Ice Co.*, 77 Me. 100 ; *Gage v. Steinkrauss,* 131 Mass.

222; *Rowell v. Doyle*, 13 Mass. 474; *Lorman v. Benson*, 8 Mich. 18; 77 Amer. Dec. 435, and notes; *Village of Brooklyn v. Smith*, 104 Ill. 429; *Hydraulic Co. v. Butler*, 91 Ind. 135; *Higgins v. Kusterer*, 41 Mich. 318; 2 N. W. Rep. 13. See 27 Amer. Law Reg., p. 240, for notes to the case of *Woodman v. Pitman, supra*, citing some other cases.

VII. This case is distinguishable from *Murphy v. Railroad*, 55 Iowa, 473, and *Turley v. Tucker*, 6 Mo. 583, and other cases cited upon the same point by counsel, by its facts. In these cases it was held that trespassers upon land,—government or private,—who cut grass or timber for removal, acquired no property therein. The grass and timber are a part of the realty, and are permanent, and not subject, as water, to movement and change. The owner of the land owns the grass and trees. But the owner of the land over which a stream flows does not own the water so as to appropriate it to his own exclusive use, and stop its flow. He may lawfully enjoy it while it is flowing over his land. When it enters the land of another he loses all interest in it. The cases cited above are not applicable to the facts of the case before us.

These considerations lead us to the conclusion that the court below erred in withdrawing the case from the jury, and directing a verdict for the defendant. REVERSED.