THE TOPEKA WATER SUPPLY COMPANY v. THE CITY
OF POTWIN *et al.*

PRIVATE CORPORATION — *Wrongdoer* — *Permanent Injunction, When Re-fused.* A private corporation cannot maintain an action for an injunction to perpetually enjoin another from committing acts which would be wrong and in violation of law, and which it is claimed would also affect injuriously the plaintiff's business, where the plaintiff itself is a wrongdoer, and could not possibly do right in carrying on its business and be injured by the acts sought to be prevented, and could not rightfully continue to carry on the business which might be affected by the defendant's wrongful acts, even if the defendant and all others should refrain from such wrongful acts, and should do right and obey the law.

*Error from Shawnee District Court.*

THE Topeka Water Supply Company commenced its action in the court below against the city of Potwin, its officers and employés, to perpetually enjoin the construction of a system of sewers for carrying off filth, excrement and refuse matter of the city into the Kansas river above the wells of the company, and also to prevent the officers, agents and employés of that city from using the river for any like purpose. Trial at the April term, 1889. The court made special findings of fact, and stated its conclusions of law thereon. This proceeding is prosecuted to review and reverse that judgment.

The Topeka Water Supply Company is a corporation existing under and by virtue of the laws of the state; it was organized on August 12, 1881, and has ever since existed as such corporation; the purpose for which the company was organized and incorporated was to construct a system of water works in the city of Topeka, and to supply the city and the inhabitants thereof with water for domestic, culinary and manufacturing purposes, and for all other purposes for which water is commonly used in large cities. The company commenced the construction of its works in the city of Topeka about October 20, 1881. It purchased and became the owner in fee simple of a tract of land within the corporate limits of

the city, lying along the south bank of the Kansas river, and adjacent thereto, which tract of land is about six hundred feet in length along the river, extending back from the river about sixty-five feet; about the same time it became the owner in fee simple of an island in the Kansas river, about one hundred feet north of the land mentioned, which island contains about six acres, and being about two thousand feet in length east and west along the river; the engine-house and buildings of the company are located between Harrison street and Topeka avenue, in the city of Topeka, and its wells are north of the engine-house and buildings, on the land belonging to the company; the frontage of the lands on the Kansas river as they now are is the same as the north frontage of the island on the river when the island was purchased by the company; this frontage is more than eighteen hundred feet. Immediately after the purchase of its lands the company sunk a large well upon the island, and erected an engine-house and buildings on the land on the south bank of the river, and placed in said buildings all the necessary engines, machinery and other appliances for the purpose of pumping water from the wells and distributing it throughout the city. The company connected the well with its engine-house and machinery by a large pipe, and also laid throughout the city several miles of water pipes for the purpose of distributing water—the water-pipes being connected with the houses, residences and other buildings of the city—and also placed in the city, at various places, fire hydrants, to supply water in case of fire: the water so distributed being pumped by means of the engines and machinery out of the well on the island, and forced through the water pipes. In the month of July, 1882, the company, by means of its works and appliances, began to supply the city and inhabitants thereof with water for domestic, culinary, fire and manufacturing purposes, and for all other purposes for which water is commonly used, and continuously ever since has been and is now so supplying the city and inhabitants thereof with water, and the water so supplied is now and has been, since said time, generally

used in the city of Topeka by the inhabitants thereof.   Since
the company commenced supplying water it has been continu-
ously, year by year, until the present time, enlarging its works
and appliances, and has put down additional pipes through-
out the city, and it has now about thirty-one miles of pipe
laid, and is now supplying water to about fifteen hundred
residences of the city, as well as to the hotels, public schools,
manufacturing establishments, and various other places in the
city, besides supplying the city with water for fire protection.
The company has since 1882 sunk on the island in the river
three additional wells for the purpose of supplying water; all
of which are connected by pipes, and the water in all of them
can be drawn from both north and south wells.   The wells
of the island are supplied with water from the Kansas river,
and the ground-water finds its way to the river through the
soil and finally through the sand surrounding the island; the
bed of the river where the water flows, as well as so much of
the bed of the river between the south bank of the river and
the bank of the island, where the water at one time flowed,
consists of gravel and sand of varying depths, and the water
flows or percolates through the sand and gravel; the water
ordinarily fed into the wells is filtered through the sand and
gravel before it enters the wells, but there is an iron pipe eigh-
teen inches in diameter extending from one of the wells out
into the flowing stream of the river above the sand, which
pipe has a valve, and from that pipe water can be let into the
wells directly from the flowing stream of the river above the
bed of the sand; the iron pipe is so placed for the purpose of
letting water into the wells in case the supply thereof, as ordi-
narily fed into the wells, should become exhausted, as it would
be in an unusual demand for fire purposes; the water from
the flowing stream of the river above the bed of the sand has
upon several occasions been let into the wells, the supply as
ordinarily fed into the wells upon these occasions not having
been deemed sufficient to supply the demand.   The wells are
walled up on the sides, and the walls cemented and built
several feet higher than the top of the island, and covered over.

The supply of water as ordinarily fed into the wells flows in at the bottom of the wells; the wells are only fed by the river coming in at the bottom thereof, and what is let in by means of the iron pipe extending out into the flowing stream of the river; the water fed into the wells from the bottom thereof is of the same kind and character as that in the flowing stream of the river above the bed of sand, except the changes that are caused by means of the filtration through the sand; the water of the wells is being constantly pumped therefrom, and stands from five feet to sixteen feet in depth in the wells, the depth varying with the amount of water in the Kansas river.

At the session of this court in November, 1889, this cause was decided, and there was filed herein an opinion, (opinion and syllabus by HORTON, C. J.,) reversing the judgment of the district court, and remanding the case with a direction to grant a perpetual injunction as prayed for in the petition of the plaintiff—all the justices concurring. The syllabus therein formulated and declared to be the law, is as follows:

"1. The following proviso, contained in §3, chapter 232, of the laws of 1889, is not unconstitutional or void. The proviso reads as follows: '*Provided*, That no sewer shall be permitted to empty into any stream from which a water supply is obtained within three miles above the point where said water supply is obtained.'

"2. Under this proviso, the city of Potwin has no authority or power to construct a sewer which it shall permit to empty into the Kansas river within three miles above the wells established and operated to obtain a water supply for the city of Topeka by the Topeka Water Supply Company."

On November 9, 1889, the defendants in error filed a motion for a rehearing, which was argued on January 10, 1890. On April 4, following, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*J. D. McFarland*, and *Case & Moss*, for plaintiff in error.

*J. B. Larimer*, city attorney, and *Vance & Campbell*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This case was decided by this court on November 9, 1889, and the judgment of the court below was reversed, and the court below was directed to grant a perpetual injunction against the defendants, as prayed for in the plaintiff's petition. In due time a motion for a rehearing was filed in this court by the defendants; and that motion is now before us for consideration. The writer of this opinion must admit that he did not understand this case as well as he ought to have understood it when the judgment of this court was rendered; and it is now the opinion of the court that such judgment is to some extent erroneous, and that it must be modified and corrected. It in effect perpetually enjoins and restrains the city of Potwin Place, and all its officers and agents, and the contractor, from constructing or using their contemplated sewers anywhere or in any manner, and also from discharging any sewage of any kind whatever into the Kansas river, although such sewage might by comparison with the waters of the Kansas river be pure enough to tend to make such waters at that place very much purer than they now are. The plaintiff in this case, the Topeka Water Supply Company, is a private corporation, and its sole business is to procure water from the Kansas river, and furnish the same to the city of Topeka and to the inhabitants thereof for compensation. The principal defendant in the case, the city of Potwin Place, is a municipal corporation, a city of the third class, and the other defendants, except Rosen, are its officers; and Rosen is the sewer contractor. The object of the action, according to the prayer of the plaintiff's petition below, is to perpetually enjoin the defendants and their agents, employés and successors from constructing and using a system of sewers, and from discharging sewage into the Kansas river above the plaintiff's wells. The case was tried before the court below without a jury, and that court made voluminous findings of fact, and upon such findings rendered judgment in favor of the defendants and against the plaintiff, denying to the plain-

tiff any injunction. It is now suggested that some of such findings are conflicting and contradictory. If they are, then that is a good ground for a reversal of the judgment of the court below and for granting a new trial, but it is no ground for rendering a final judgment upon such findings for either party, as this court has ordered to be done. It is also suggested that some of the findings are not supported by sufficient evidence. If this were true it would be a good ground for a reversal of the judgment of the court below and. for granting a new trial, but it would not be any proper ground for rendering a final judgment in the case in favor of the party against whom the findings of fact were made. We have no authority to reverse the findings of fact made by the district court; nor to make findings of fact for ourselves upon the evidence brought to us from the district court; nor to set aside the findings of fact made by the district court; nor to ignore such findings where they are within the issues made by the pleadings in the case; nor to render or order to be rendered a final judgment for either party against or without findings of fact. All that we can do, if we do not think that the findings of fact are supported by sufficient evidence, is to reverse the judgment of the trial court rendered upon them, and order that a new trial be granted. But in fact, while the evidence in the case is to some extent conflicting, yet every finding of fact made by the trial court we think is supported by sufficient evidence, and therefore under the well-established rule of this court, and of all other courts that hear cases on petition in error, we must take the findings of fact made by the trial court as absolutely true and correct, or at least true and correct so far as they are material to the case and not in conflict with each other. Now, taking the findings of fact made by the trial court as absolutely true and correct, will they support and sustain the judgment rendered by this court, or must such judgment be vacated, or to some extent modified? We shall now proceed to consider such findings of fact, and their effect upon this case.

It appears from the findings of fact made by the court be-

low, that the sole business of the plaintiff is to furnish water to the city of Topeka, a city of the first class, and to the inhabitants thereof, for compensation, and that it has the right to so furnish the same only under the provisions of an ordinance of the city of Topeka which was adopted on September 5, 1881, and took effect on September 7, 1881; which ordinance, with all its terms and conditions, the plaintiff shortly afterward accepted, and it has acted under it ever since. Under the ordinance the plaintiff, the Topeka Water Supply Company, has the right and the privilege "of supplying the city of Topeka, in Shawnee county, in the state of Kansas, and the citizens of said city of Topeka, with good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes." (Ordinance, § 1.)   The ordinance also provides among other things as follows:

"SEC. 10. Said company binds itself, during the continuance of the contract which may be made under this ordinance, to furnish at all times for public and private use of said city and the inhabitants thereof, a full and sufficient supply of good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes."

"SEC. 16. Any failure on the part of said company to comply with any of the provisions of this ordinance, either as to the amount of water or the quality of the same, or any failure to furnish a sufficient supply of water at all times, excepting in cases of unavoidable accidents, said company shall forfeit its franchise, and this charter shall be null and void."

The Topeka Water Supply Company has no right or privilege, and none has ever been granted to it, to furnish any other kind or character of water to the city of Topeka, or to its inhabitants, than the water described in the foregoing provisions of the ordinance.   According to the findings of the district court, the Water Supply Company obtains its water from the Kansas river, both directly and indirectly.   It obtains it by means of an iron pipe extending from one of the supply wells out into the river and into the flowing stream, and all the wells are connected by means of iron pipes; and it also obtains water by means of the same percolating from

the Kansas river through the sand and gravel in that vicinity into its supply wells; but with reference to this last-mentioned kind of water the court finds in its sixth finding of fact, among other things, as follows:

"The water fed into said wells from the bottom thereof is of the same kind and character as that in the flowing stream of said river above said bed of sand, except the changes that are caused therein by means of the filtration through the sand."

The court below also made the following special findings of fact:

"13. That notwithstanding the drainage from said the city of Potwin Place or from other sources, is discharged into said the Kansas river in the manner above stated, the said wells belonging to and used by the plaintiff for supplying the inhabitants of the city of Topeka with water for domestic use and purposes, the said wells above described cannot be supplied with good, wholesome water, well suited for domestic purposes, from the Kansas river at said wells, or at any point within two or three miles above said wells; that the topography of a large portion of the territory included within the corporate limits of the said the city of Topeka lying west of Kansas avenue in said city and south of said Kansas river, is and always has been and always will be such that the drainage outlet of an area of about 600 acres on which reside not less than 15,000 inhabitants, and which number is rapidly increasing, and said drainage is caused by surface and underground drainage to flow into said river in close proximity to, and principally above said wells, and all within the drainage area of said wells; that immediately adjacent to and west and southwest of the corporate boundaries of the city of Topeka, and lying south and west of the city of Potwin Place, within three years numerous and large plats and additions and suburbs to said the city of Topeka have been laid out, and are being rapidly built up for residence of families and other purposes, and many hundreds of houses, including a large hospital, several churches, stores and school-houses have been erected, and many more are in contemplation and progress of construction, and will in the near future be erected and occupied; that said platted territory last above described, outside of the city of Potwin Place and outside of the corporate limits of the city of Topeka, includes more than a thousand acres of land, all

platted into town lots, and designed to have houses erected on and occupied as residences and for various other purposes; that about 400 houses have been erected on said tract during the last three years, and are now being occupied; that the natural drainage from all the said territory finds its way into the Kansas river above and near the wells of the Topeka Water Supply Company, by surface drainage and underground drainage known as ground-water, and by following through the sand and gravel finds its way into the wells of the Topeka Water Supply Company, by the laws of natural drainage, and tends to pollute the water in the upper and lower currents in the Kansas river at and above said wells.

"14. That less than two and one-half miles above said wells of the Topeka Water Supply Company, and on the south bank of said Kansas river, are located the buildings of the Kansas insane asylum, which buildings are constantly occupied by more than seven hundred inmates, etc.; that all the sewage of said buildings and the premises connected therewith flows constantly through a large sewer or pipe into the Kansas river, which tends to and does pollute the water in said river; that said asylum buildings were erected and occupied, and said sewer therefrom was used as aforesaid in 1879, and before said Topeka Water Supply Company was organized, and have been in constant and uninterrupted use ever since.

"15. That on the north bank of the Kansas river and above said wells is a large slaughter-house and several manufacturing establishments, and several thousand people have erected and occupy many houses on and near the north bank of said river; and said portion of the city of Topeka has no system of sewerage whatever, and the said portion of the city is growing rapidly in a western direction.

"16. That all these facts were known to the said city of Topeka and the said Topeka Water Supply Company previous to the purchase of the real estate herein described and the construction and erection of its buildings, wells, etc., aforesaid by said the Topeka Water Supply Company."

The principal ground, *at the present time*, upon which the plaintiff founds its right of action, is the *proviso* attached to § 3, of chapter 232 of the Laws of 1889. It is said that this proviso was procured to be enacted by the legislature especially for the purpose of affecting this very case, which case was then pending in the district court of Shawnee county. Now

assuming for the purposes of this case that this proviso is valid and applicable to this case — but the question is a doubtful one — still has the plaintiff with or without this proviso any cause of action upon the facts of the case as found by the trial court? The proviso reads as follows:

"*Provided*, That no sewer shall be permitted to empty into any stream from which a water-supply is obtained within three miles above the point where said water supply is obtained."

Now this proviso does not purport to give to any person or corporation, public or private, any cause of action, and therefore, notwithstanding this proviso, we shall have to resort to the general principles of law and equity in order to determine whether the plaintiff has any cause of action or not, under the facts of this case. It must be remembered that the plaintiff in this case is a private corporation, and not the state of Kansas, or any public officer who has any authority to represent the state. It also obtains its water from a navigable stream, whose waters it does not own and cannot own until it separates them from the stream. (*Wood v. Fowler*, 26 Kas. 682.) And while it owns the land adjoining the river and up to the margin of the stream, yet it does not obtain or use the water which it obtains from the river, as a riparian proprietor. It is simply a corporation, that cannot drink, nor use water for any domestic or household purpose, nor use it to supply any natural want, and it does not use it as an incident to some primary use of its real estate, and indeed it does not use it under any riparian right, but it uses it merely for the purpose of carrying it away from the stream across its land and into the city of Topeka and there selling it to others for compensation. This is not a use of the water under riparian rights. (*City of Emporia v. Soden*, 25 Kas. 588, 606, 607.)

But above all, and worse than all, according to the findings of the court below, it is itself a wrongdoer, violating its contract with the city, violating the city ordinance, and violating duty and obligation, by furnishing water to the city of Topeka and to its inhabitants which is unfit for use. Now

the question arising upon these facts is, not whether a party in the rightful and legal exercise of a legitimate business has the right to an injunction to restrain some wrongdoer from committing acts which will seriously and injuriously interfere with and affect such party's lawful and rightful business, but it is, whether one wrongdoer may obtain an injunction to restrain another wrongdoer from committing an act which could not possibly, under any circumstances, do the plaintiff any harm if the plaintiff should himself or itself do right and obey the law, and where the absolute refraining by the defendant and all others from the commission of the act or acts complained of, and from all other wrongful acts, would not and could not possibly, under any circumstances, enable the plaintiff to do right and to obey the law if the plaintiff should still continue to carry on the business sought to be protected by the injunction. Of course the state of Kansas, through its attorney general or any other proper officer, and by any proper action or proceeding, has the right to compel all the corporations of the state, public and private, and all the officers of the state and others, to obey the laws of the state, and this without reference to whether any particular injury may result to any individual or corporation from a violation of the laws, or not; but no private individual or private corporation has any such extended right. A private person or corporation has no right to an injunction merely to restrain another from committing some apprehended violation of law. Nor has such private person or corporation any right to an injunction to restrain another from doing any particular act unless the performance of the act would result to the injury of the party seeking the relief; and even then, in order to entitle the party seeking the relief to the relief sought, the contemplated injury must be substantial and not merely nominal, and must be special and particular as to the party seeking the relief, and different in kind from that which will affect the public in general. An action for damages where the wrong has already been committed may sometimes be maintained where the damage is merely nominal, but no action for an injunction to

restrain the commission of an anticipated wrong can be maintained unless the anticipated wrong will clearly work some substantial injury to the party seeking the relief. Nor has a private person or corporation any right to an injunction to restrain another from the commission of any act merely for the purpose that such private person may reap some anticipated advantage from the future commission of some wrong or some unwarranted act on his or its part. The party seeking the relief cannot say to the person whom he or it wishes to have enjoined:

"It is true I will not be injured by your wrongful act or acts, provided I do right myself, but I do not intend to do right. I expect to violate duty, obligation, contracts, the city ordinances, and to infringe upon the dearest and most valued rights of others, and by so doing I expect, if you do not interfere, to reap great though reprehensible advantage; but if you do interfere, it will prevent me from reaping this much-coveted and contemplated advantage, and therefore, as you are an expected and intended wrongdoer as well as myself, you should be restrained from the commission of your contemplated wrongs in order that I may commit mine."

Under the findings of the trial court the Topeka Water Supply Company may, if it chooses, obtain reasonably good water by going further up the river to a place above Potwin Place, above the insane asylum, and getting its supply of water there; but, according to such findings, it cannot obtain good water from the place from which it now obtains its supply. If it should go above Potwin Place and there obtain its water, then no act or acts on the part of Potwin Place could possibly do it any harm, and according to the findings of the court below it cannot obtain good water below Potwin Place, and at or above the place from which it now obtains its water. It can there obtain only such water as is unfit for use, and by obtaining the same there and furnishing it to the city of Topeka and to the inhabitants thereof, it not only does wrong, but it also violates its contract and violates the city ordinance. Will a court of equity encourage any such thing? Such would be a violation of some of the best established maxims

of equity. This is an equitable action, and it is a general rule of equity that he who seeks equity must do equity. And it is also a general rule of equity that he who goes into a court of equity must do so with clean hands. In other words, a party can obtain no order, judgment or decree from a court of equity for the purpose that he may with greater profit or advantage violate the rules of equity. The granting of an injunction in this case could be of no possible benefit or value to the plaintiff, provided it should do right itself. If the findings of the court below are correct, then not all the injunctions which all the courts in Kansas or elsewhere could grant would be sufficient to enable the plaintiff to furnish from the place where it now obtains its supply, "good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes." And courts of equity are not swift to grant futile, worthless, or fruitless orders. Although both parties in this case are wrongdoers, yet this is not merely a question of balancing wrongs as between such wrongdoers. The party seeking the relief must himself or itself do right, or it is not entitled to the relief sought. There are differences, however, between the wrongs of these two wrongdoers, some of which we might mention. The plaintiff's wrongs are not only contemplated, but they are also present as well as past and consummated, while the defendant's wrongs are only in prospect, merely contemplated or expected. It is true the defendants have already constructed some of their sewers, and this court, by its judgment, has ordered that they be enjoined from using them; but it does not appear from the record that any of these sewers have been constructed anywhere near the Kansas river, or that the defendants have ever yet discharged any sewage into or near such river. They have not yet done, or caused to be done, the slightest injury or damage to the plaintiff, and as yet the plaintiff has no cause to complain of anything that has really or actually taken place. It would result in some loss to either party to refrain from the commission of its contemplated and intended wrongful acts. The plaintiff, at some loss, would have to go further

up the river to procure good water, while the defendant, the city of Potwin Place, at a loss of about $75,000, according to the findings of the court below, would have to go further down the river to discharge its sewage. But if it should go further down the river to discharge its sewage, would not some still lower riparian proprietor, the owner of a town lot, for instance, worth a few dollars, commence an action to restrain such city from discharging its sewage there? And such lower riparian proprietor, if he were an individual person, would probably have real and substantial riparian rights. Whether he could maintain any such action or not, it is not necessary to express any opinion in this case. If the plaintiff could obtain good water from the place where it is now obtaining it, except for the contemplated wrongful acts of the defendant, then we would think that the plaintiff would have a right to an injunction. Even if the plaintiff, except for the joint or separate wrongs actual and contemplated of the defendant, and as many others as might possibly be engaged in doing wrong, could obtain good water from the place where it is now obtaining it, it would also have its right to an injunction. But such is not this case under the findings of the court below. Under such findings, even if the defendant and all others should do right and obey the law, still the plaintiff would not be able from the place where it now procures its water to obtain that kind of water which it has agreed to furnish to the city of Topeka, and to the inhabitants thereof, and which kind only it has any right to so furnish.

The plaintiff in error has cited several cases where the actions were brought either by the attorney general, or for the recovery of damages, or where, except for the wrongs of the defendant or of the defendant and others, the plaintiff might do right and still be injured, or for the invasion of strict riparian rights; but none of these cases is the present case. The present case is an action in equity for an injunction by a private corporation which is itself a wrongdoer, and which cannot do right and obey the law and suffer any injury. The question, stated in considerable detail, is substantially as fol-

27—43 KAS.

lows: Where the sole business of a private corporation is to furnish a city and the inhabitants thereof "with good, clear, healthful and wholesome water, well suited for domestic and manufacturing purposes," and such private corporation has no right or privilege to furnish any other kind of water, and such private corporation obtains its water from a certain navigable river, it owning the land up to the margin of the stream where it obtains its water, and another city is about to discharge sewage into such river above the place where such private corporation obtains its water, but the water in such river is already so polluted that if such city and all others should refrain from doing any wrongful act that might tend to further pollute the same, such private corporation would still be unable to procure good water fit for domestic use from such river at the place where it obtains its supply, or from any place between that place and the place where such city contemplates discharging its sewage, can such private corporation maintain an action for an injunction to perpetually enjoin such city and its officers from constructing or using sewers in the city, or from discharging sewage into the river at the place where such city contemplates the discharge of its sewage? A controlling fact in this case, aside from other facts, is, that the plaintiff is a wrongdoer, and that it cannot be anything else than a wrongdoer and be injured by the contemplated acts of the defendants. The defendants have also cited a considerable number of cases, among which is the case of *Wood v. Sutcliffe*, 8 Eng. Law and Eq. 217, (2 Simon's Chancery, N. S. 163,) which seems to have the fullest application of any case cited on either side. We do not know of any case having entire application to this case; hence, in the consideration of this case upon this motion for a rehearing, we have considered the same almost entirely upon the general rules, principles, and maxims of law and equity, and especially upon the following general maxims in equity, to wit: "He who comes into equity must come with clean hands;" "He that hath committed iniquity shall not have equity;" and "He who seeks equity

*Water-supply company, not entitled to an injunction.*

must do equity." It certainly cannot be maintained that an action for relief in equity may be founded upon iniquity, and in favor of a water-supply company which possibly, on account of its own wrongdoing, *has forfeited its right to exist as such.* (See §§ 1, 10 and 16 of the Topeka city ordinance above mentioned, and the findings of fact of the court below.) Upon the general principles of law and equity we think that the judgment of this court heretofore rendered is erroneous. It will therefore be modified to the extent that instead of directing the court below to issue a perpetual injunction in favor of the plaintiff, it will direct the court below to grant a new trial.

All the Justices concurring.