GEORGE H. M. BARRETT *vs.* ROCKPORT ICE COMPANY.

Knox.    Opinion December 22, 1891.

*Waters.    Great Ponds.    Ice.    Title.*

The lessee of a portion of the shores of a great pond, who without scraping
the snow from the ice thereon, erects stakes with his name thereon around
nearly one half the pond, does not thereby acquire such a right to the ice
thus inclosed as will enable him to maintain trover against an Ice Company
which, previous to the formation of the ice, removed the lily-pads, scraped
off the previous snows, bored holes in the ice to let off the surface water and
proceeded to harvest the ice against the written protestation of the plaintiff.

ON REPORT.

This was an action of trespass for depriving the plaintiff of an
ice field on Lily Bay in Rockport and which, having been staked
out by him, he claimed to have legally acquired.

The facts appear in the opinion.

*W. H. Fogler*, for plaintiff.

*C. E. and A. S. Littlefield*, for defendant.

VIRGIN, J. This is an action for cutting and carrying away more or less of fifteen acres of ice from Lily Pond. The case comes up on report with the stipulation that, if the action is maintainable it is to stand for trial, otherwise a nonsuit to be entered.

The owner of the bed of a mill pond raised by a dam across an unnavigable stream, has as an incident to such ownership the right to cut the ice therefrom whenever the exercise of such right does not appreciably diminish the head of water to the detriment of the mill owner. *Stevens* v. *Kelley*, 78 Maine, 445; *Paine* v. *Woods*, 108 Mass. 160, 173; *Higgins* v. *Kustener*, 41 Mich. 318.

But the law governing ponds of more than ten acres in extent, denominated "great ponds" by the colonial ordinance of 1641–7, is different. Of such no individual owns the subjacent soil. That and the ponds themselves are held by the state for the public. The right to take fish or ice therefrom is common and free to all, unless abridged by the legislature. *Barrows* v. *McDermott*, 73 Maine, 441; *Roxbury* v. *Stoddard*, 7 Allen, 158. Neither the shore proprietor, nor any corporation with simple charter authority to cut ice thereon, has any greater or different right in respect to that, than every other inhabitant who can gain legal access to the pond. *Brastow* v. *Rockport Ice Co.* 77 Maine, 100; *Hittinger* v. *Eames*, 121 Mass. 539; *Gage* v. *Steinkrauss*, 131 Mass. 222; *Rowell* v. *Doyle*, *Id.* 474.

As the state holds such ponds and their contents and products for the people, the legislature may regulate the essential acts of possession which shall constitute a legal appropriation of a given quantity of the ice. *Barrows* v. *McDermott*, *supra*. Although the ice business has developed so enormously within the last eight or ten years, the legislature has not yet taken the subject in hand, and hence all rights pertaining thereto necessarily rest upon judicial interpretation. *Woodman* v. *Pitman*, 79 Maine, 456, 460.

Neither have the courts fully settled the definitive rules which shall govern the rights of the public, though they have with more or less harmony laid down a few general rules pertaining

thereto.   Thus this court, in an action in which this defendant
was a party, has declared that the rights of individuals are equal,
to be exercised in a reasonable manner, with a due regard to
the rights of all who may wish to take ice from this pond.
*Brastow* v. *Rockport Ice Co. supra*.   So the court in Massa-
chusetts has made a like decision, that every inhabitant who can
obtain access to a great pond without trespass, may cut ice
thereon for use or sale, so long as he does not interfere with the
reasonable exercise by others of like rights.   *Rowell* v. *Doyle*,
131 Mass. 474.   And the court in Kansas has said that, "he
who first appropriates and secures the ice owns it.   *Wood* v.
*Fowler*, 26 Kans. 682.

What is essential to constitute such an appropriation is not
fully settled.

Where the plaintiff enclosed with marked stakes and with a
snow-plow plowed around a certain field of ice upon the Mis-
sissippi river; had a flat-boat on the spot to remove the ice;
held constant possession by a body of employees who kept it
swept; and after expending more than two hundred dollars in
preserving it and it was fit to cut, the defendant with a crew
armed with clubs, drove the plaintiff and his employees away
and cut and carried off the ice, the defendant was held liable
for the ice.   *Hickey* v. *Hazard*, 3 Mo. App. 480.

So, on the Detroit river, where the channel was eighteen hund-
red feet in width, an ice company extended a boom parallel with
and fifteen feet from the shore on which its ice houses stood,
the defendant was held liable for unnecessarily running its ferry-
boat up and down the river so near to the boom as to break up
and destroy the ice which had formed inside of it.   *People's Ice*
v. *Steamer Excelsior*, 44 Mich. 229.

In the case already cited, lessees of a tract of land on the
bank of Kansas river were denied an injunction against the
defendant's taking ice opposite and next the lessees' land.   The
court concluded their opinion by saying:   " The one who first
appropriates and secures the ice which is formed is entitled to
it, and on the same principle that he who catches a fish in one
of these rivers, owns it."   *Wood* v. *Fowler*, *supra*.

Again, where lessees of ice houses on the shore of a great pond scraped the snow from a portion of it and then left it for a day and two nights in order that it might increase in thickness — it was held that they thereby acquired no such title thereto as would enable them to maintain an action of tort against one who cut holes through the ice for the purposes of fishing and knew the purposes for which it was cleared and the usual manner of harvesting ice. Gray, C. J., said : "At the time of the acts of which the plaintiffs complain, they had not cut any ice, nor were they engaged in cutting or otherwise in actual possession." *Rowell* v. *Doyle*, 131 Mass. 474, 476.

So, in the very late case of *People's Ice Co.* v. *Davenport*, 149 Mass. 322, it was held that, scraping the snow from about one half of the ice of a great pond, and marking it off with stakes and then suspending further active operations, give no such title as will enable the party to maintain trover against another, who five days later cut and gathered the ice. Morton, C. J., after reaffirming the previous cases decided by that court, said : "The case is not like one of capturing animals *feræ naturæ*, or of taking possession of derelict property. It is more analogous to the case of a tenant in common attempting to take possession of the common estate, by staking it off and thus excluding his cotenants."

The latest decision which has come under our observation, is *Brown* v. *Cunningham*, decided by the Supreme Court of Iowa in May, 1891, and reported in 48 N. W. Rep. 1042. The government had meandered the shores of the unnavigable Wapsipinicon river, retaining title to the bed thereof when disposing of the adjacent lands. The plaintiff, not a riparian owner, obtained lawful access to the river, harvested a large quantity of ice, and cut and made preparations for moving more, when he was enjoined at the suit of the defendant. In an action upon the injunction bond, the court after a learned discussion of the case both on principle and authority, rendered judgment against the defendant. Beck, C. J., said : "Any citizen who may lawfully go upon the stream may gather ice from it under the regulations prescribed by law. He is entitled to the ice he

prepares by his labor to be removed.   It is plain that if he cuts ice for transportation to his ice house, another cannot rob him of his labors by carrying away his ice ; and it is plain that when he makes preparations to use the ice upon a certain part of the stream, prepares its surface for cutting, erects machinery to handle the ice, makes walks or ways for workmen, or in any other proper manner indicates the part of the stream which he occupies in his operations, which must be reasonable in extent and in all other respects, he has a property right to the occupation of such locality during the ice season and to the ice formed there ;" and added that analogous rules were adopted by settlers and miners in every territory in the union.

In this State, in an action on the case for the value of a two-horse team of a traveler upon the Penobscot river, drowned by breaking through the thin ice formed in a place from which the thick ice had been removed by the defendant, PETERS, C. J., by way of illustration, said :  "The ice fields, after they have been staked, fenced and scraped, have so far become the property of the appropriator that an action would lie against one who disturbs his possession."   *Woodman* v. *Pitman*,  79 Maine, 465.

The pond in question contains about thirty-two acres, and is therefore, a "great pond."   The plaintiff was in possession of seventeen rods of the shore owned by his mother.   In the fall of 1889, he dug a ditch extending several rods back from the pond, through which ice could be floated to the upland.   On the night of January 27, 1890, commencing at ten o'clock and finishing at six the next morning, the plaintiff run a line of stakes marked "B Ice Co." from his land diagonally across the pond then covered by four inches of snow, and thence near to the shore around one end of the pond to his land thereby inclosing some fifteen acres — or nearly one half its surface.   He owned a set of ice tools which he had not used since 1884, when he last cut ice, and his ice houses were in a dilapidated condition.

The defendant had annually, for fifteen years, cut large quantities of ice, employing a large number of men and teams therefor, had and claimed possession of nearly all the accessible

shore property except the seventeen rods in possession of the plaintiff, and had cut the ice on the same territory the season before, and had commodious ice houses. Late in the fall of 1889, but before the ice began to form, the defendant cut out and removed the lily-pads which covered much of the surface and unless removed rendered the ice worthless; subsequently, as the rains fell, bored holes through the ice to let off the surface water, which otherwise injures the ice; scraped off the snow that had thus far fallen during the season, employing several men therefor on January 13, 1890, several days before the erection of the plaintiff's stakes — in that business. And after the plaintiff left the ice on the morning of January 28, 1890, the defendant's employees went upon the pond and commenced opposite the plaintiff's ditch to scrape, fit and haul the ice. They were delayed by a storm several days and finished the fore part of February.

After the defendant's employees had been at work a few hours, the plaintiff served a notice in writing on the defendant of his staking out the territory described, therein forbidding meddling with his stakes, scraping the snow or cutting the ice inclosed, and declaring the plaintiff's intention to cut the same, which the defendant ignored, but continued to cut and take away the ice, without any further action by the plaintiff.

Now, assuming that this court intended by the few clauses quoted in *Woodman* v. *Pitman, supra,* to define the acts essential to an appropriation of a field of ice, the plaintiff's acts, as above recited, fall far short of constituting him an appropriator. The only acts looking in that direction were his digging the ditch, his nocturnal erection of stakes, and serving the written notice. He scraped no snow; he removed no lily-pads; he ignored the surface water; made no preparations whatever to cut the ice, though twelve to fourteen inches thick. No one prevented him or forbade him.

We are of the opinion, therefore, that the action is not maintainable against the defendant who did proceed to cut without any molestation from any source. *Plaintiff nonsuit.*

PETERS, C. J., WALTON, EMERY, FOSTER and HASKELL, JJ., concurred.