## LAWRENCE SKELLY *vs.* THE PLEASURE BEACH PARK CORPORATION.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued April 5th—decided May 10th, 1932.

*J. Warren Upson,* for the appellant (defendant).

*John E. Whalen,* with whom was *Herman B. Engelman,* for the appellee (plaintiff).

HINMAN, J.   The defendant corporation owned and operated an amusement park abutting on Long Island Sound, including bathhouses and a place for swimming and bathing in the waters of the Sound.   A part of the beach, approximately four hundred feet in length, situated in front of the bathhouses, was enclosed by wire fences extending from the bathhouses to and below low-water mark, and this area was reserved for the use of the defendant's patrons who paid the required admission charge.   The defendant located and maintained in the water opposite this enclosure two floats and, midway between these but about seventy-five feet further from shore, a stationary diving tower. Both floats were moored to the shore by lines running to posts, and on the farther side of the westerly float a line about fifteen feet in length ran to an anchor of steel two feet wide and four feet long embedded in the sand, and on the farther side of the easterly float a similar line ran to a cement block about two feet square, sunk in the sand.   The defendant caused the floats and anchors to be inspected weekly, and about seven days prior to July 22d, 1930, the anchors of both floats were found to be below the surface of the bottom, but in the interim a storm causing the water to become very rough had occurred.

On the afternoon of July 22d the plaintiff purchased an admission ticket, entered the enclosed area, and eventually walked from the beach into the water and had passed one of the floats five or ten feet when he struck the calf of his right leg against a submerged object, and sustained a wound which caused him con-

siderable suffering, expense, and disability. Immediately after his injury he examined the object which had inflicted it, by feeling under the surface of the water, and testified that it felt like rough cement about two feet square at the top.

The facts above stated were substantially undisputed and it is not claimed that the jury could not reasonably have found them. The main reliance of the appellant as to the motion to set aside the verdict is upon a contention that, principally on account of the effect of the granting of motions to strike out, evidential support is lacking for a further fact, essential to recovery, that the object by which the plaintiff's leg was wounded was the concrete block used as an anchor for one of the floats, as the plaintiff claimed. Testimony given by the plaintiff indicated that the float toward and past which he walked through the water was the right-hand or westerly float, and that the object which injured him and which he described was near that float. It developed later that the anchor of this float was of steel and of different shape and size from the concrete block which was used as anchor for the easterly float. Thereupon counsel for the defendant moved that the plaintiff's testimony "identifying the post or object on which he was injured be stricken from the record on the ground that it had not properly been identified" and this motion was granted. Another witness, Kelleher, testified that on the day after the accident the anchor of the easterly float protruded above the bottom and that an employee of the defendant then covered it with sand. This evidence was also stricken out on the ground that this anchor had not been identified as the object which injured the plaintiff.

The motion pertaining to the plaintiff's testimony was so indefinite that the extent of its effect upon the

evidence as a whole cannot be ascertained accurately. Such a motion should indicate the testimony sought to be eliminated with sufficient certainty to identify the portion challenged. *McCabe* v. *Brayton,* 38 N. Y. 196; 38 Cyc. 1404. We would be warranted in treating the motion as ineffectual because of indefiniteness but, at most, the effect of its allowance cannot extend beyond removing from consideration by the jury such of the plaintiff's testimony as indicated to which of the floats the object which injured him was adjacent; his description of this object from his examination of it by sense of touch under the water manifestly was not within the scope or ground of the motion. Concession of the effect we have indicated is not necessarily destructive of the verdict rendered. No object, other than the concrete block, resembling that described by the plaintiff, is shown to have been present in the vicinity of either float. Wagoner, defendant's employee and called by it as a witness, testified that after the accident, on the same day, he inspected the anchor of the easterly float at the direction of the manager of the bathing place and found it projecting from the ground about six inches. From this the jury might find the condition of the anchor, notwithstanding the withdrawal from them of the testimony of Kelleher to the same effect. They might also regard as significant as to the location at which the plaintiff was injured, the order by the manager for the inspection of this anchor instead of that of the westerly float. We cannot say that upon this and other evidence available to them and permissible inferences therefrom the jury would not be justified in deciding that it was the block anchoring the easterly float which caused the plaintiff's injury. Therefore, the verdict withstands this ground of attack.

The remaining assignments are addressed to the

charge and center upon a general contention that the place where the plaintiff was hurt was outside the scope of the defendant's duty to the plaintiff and other invitees to exercise reasonable care to keep the premises and facilities of its bathing place reasonably safe for its patrons. *Nordgren* v. *Strong,* 110 Conn. 593, 599, 149 Atl. 201, and cases cited page 600; *Maehlman* v. *Reuben Realty Co.,* 32 Ohio App. 54, 166 N. E. 920; *Bass* v. *Reitdorf,* 25 Ind. App. 650, 58 N. E. 95. It does not appear to be denied by the appellant that if its duty in that respect extended to the anchor of the float, it might have been held negligent in failing to discover and remedy the condition thereof, but it is claimed that there was such a failure of proof that the anchor caused the injury that it was error to submit that question to the jury. This assignment is disposed of by what has been said concerning the verdict.

It is asserted, further, that the trial court erroneously failed to define sufficiently the area within which the defendant's duty to its invitees attached. The charge dealt at considerable length with this duty and instructed correctly as to the measure thereof, and that it applied to the premises and facilities provided for the public, including the plaintiff, and to which the defendant invited him—the swimming place and its appurtenances maintained by the defendant for the use of the public. This was sufficient under the factual situation; it could not well be construed otherwise than as comprehending the bathing appliances— the floats and their anchors, and the diving tower— and the space occupied by them and that incident to the use for which they were designed and provided, and, in general, the territory intended and customarily used for the purposes for which the bathing place was provided and maintained, and to which, in its own interest, the defendant invited the public. The area

so indicated did not exceed that contemplated by the general rule as to the extent of the duty and responsibility of a bathing beach proprietor. *Turlington* v. *Tampa Electric Co.*, 62 Fla. 398, 56 So. 696, 38 L. R. A. (N. S.) 72, 76, and cases cited.

It is claimed, however, that as the premises owned by the defendant extended only to low-water mark its duty to invitees was limited correspondingly and that it should have been charged that if the plaintiff was injured outside of low-water mark, the defendant would not be liable. The defendant was not entitled to such an instruction. "One who asserts and maintains control of property may be liable for defective conditions existing thereon though he have in fact no title to it." *Thelin* v. *Downs,* 109 Conn. 662, 668, 145 Atl. 50. One who assumes to offer the use of public waters for bathing in connection with bathhouses and other appropriate appliances maintained by the owner of the shore, owes a duty to exercise reasonable care to prevent injury to patrons who use the waters in the usual and ordinary way and consistent with the invitation extended. "Though the waters are public and no governmental authority be expressly given to so offer them for use, one who assumes to so offer the use of the waters also assumes the legal duties and liabilities that are commensurate with such . . . use. The nature of such use fixes the duties and correlative liabilities. . . . The nature of the use and the extent of the premises covered by an implied invitation to use, may be determined by the continued and general custom of the patrons of the place." *McKinney* v. *Adams,* 68 Fla. 208, 225, 66 So. 988, 56 L. R. A. (N. S.) 442, 448. Application of this test would exclude the extreme examples suggested by the appellant of responsibility to persons walking or swimming in the Sound a long distance off shore; it would include, as it

should, the location of the defendant's floats and diving tower and such space as is necessary or appropriate to the ordinary uses and purposes for which the bathing place was maintained. It appears that the place where the plaintiff was injured was a considerable distance inside the location of the diving tower and within a few feet of one of the floats, and therefore clearly within the premises as to which the defendant owed a duty of reasonable care to protect its patrons from unsafe conditions not only of the appliances provided but also in the water or on the bottom. *Turlington* v. *Tampa Electric Co., supra.*

There is no error.

In this opinion the other judges concurred.