JOAN GRATTO PRO AMI
EUGENE GRATTO

*vs.*

FRANK PALANGI

Androscoggin.   Opinion, December 30, 1958.

*Platz & Scolnik,* for plaintiff.

*Edward J. Beauchamp,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J. On exceptions. The plaintiff, Joan Gratto, a child then twelve years of age, was struck by a motorboat while she was bathing at defendant's public bathing beach, known as "Long Beach," on Sabattus Pond. These are companion tort actions brought by Joan Gratto pro ami to recover for the injuries sustained in the accident and by her father for his special damages. The cases are before us on exceptions to the direction of verdicts for the defendant and present identical issues of law. For convenience we will discuss only the case of the child Joan.

Under the familiar rule recently restated in *Ward* v. *Merrill*, 154 Me. 45, 47, 141 A. (2nd) 438, "The issue . . . is whether or not the ruling of the presiding justice was warranted, bearing in mind that the evidence, with its inferences must be viewed in the light most favorable to the plaintiff."

The jury could reasonably have found as follows:

On a July afternoon in 1956, Joan, her cousin Linda, and two other children were taken by Joan's mother to the bathing beach. Joan paid the admission fee of fifteen cents required by the defendant proprietor and was admitted to the beach and bathing area.

The children placed a blanket on the beach and went about waist deep into the water, made rougher than usual by a stiff breeze. After the other children returned to the beach Joan and Linda continued playing and ducking under water to see who could stay under for the longest time.

Mr. Boulette and Mr. Levasseur were launching a motorboat from the beach at a point about ten feet from the public beach on land owned by the defendant and leased to one Roberge. A fence marked the division between the public and private sections of the beach.

Boulette waded into the pond to hold the boat steady in the stiff breeze. When he was about waist deep he hoisted himself into the boat and his companion started the motor. Linda, standing in the water a few feet from the plaintiff, tried without success to "wave off" the oncoming boat. The plaintiff, who had ducked under water, did not see the boat, and as she was coming up was struck by the propeller. The evidence, although conflicting, was sufficient to establish that the accident occurred in front of the public beach within the area used by the defendant in connection with his business and at a point very near the line between the public and private beaches extended into the pond.

The operators of the motorboat were thoroughly familiar with the general location and were fully aware of the presence of children at the public beach.

(Boulette on the stand.)

"Q    Is that why you were holding the boat so it wouldn't go over that way?

A    No.

Q    Why were you holding the boat?

A    The water was rough.

Q    And why did you hold the boat when the water was rough?

A    Not to have any accident with the children."

(Levasseur on the stand.)

"Q    Would you describe what the premises looked like on that day?

A    Well, I would say like any ordinary day. There were people on the beach, some laying on blankets, others playing in the water.

Q    There were other people in the water?

A    There were people in the water along the beach."

The plaintiff contends the defendant was negligent in failing to maintain the standard of due care placed upon

beach proprietors, (1) in failing to enclose the bathing area in front of the public beach, (2) in failing to provide a lifeguard, (3) in failing to warn the plaintiff that motorboats often came into the bathing area, (4) in failing to make the premises reasonably safe for the plaintiff, (5) in failing to prevent or warn against the foreseeable negligent acts of third persons, as here the operators of the motorboat.

We turn to the measure of the duty owed by the defendant to the plaintiff under the circumstances here disclosed. Plainly the plaintiff was an invitee of the defendant at the public beach. The applicable principles were stated by Justice Thaxter in *Hawkins* v. *Theatre Co.*, 132 Me. 1, 4, 164 A. 628:

> "The obligation, which the proprietor of a theatre or amusement enterprise owes to his guests, has been clearly set forth. He must guard them not only against dangers of which he has actual knowledge but also against those which he should reasonably anticipate. . . The failure to carry out such duty is negligence. A recovery may be had, even though the wilful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen. . ."

Other illustrative cases are: *Morrison* v. *Park Association*, 129 Me. 88, 149 A. 804 (fair) ; *Easler* v. *Downie Amusement Co.*, 125 Me. 334, 133 A. 905 (circus) ; *Brown* v. *Rhoades*, 126 Me. 186, 137 A. 58 (amusement park) ; *Hoyt* v. *Fair Association*, 121 Me. 461, 118 A. 290 (fair) ; *Higgins* v. *Agricultural Soc.*, 100 Me. 565, 62 A. 708 (fair) ; *Thornton* v. *Agricultural Soc.*, 97 Me. 108, 53 A. 979 (fair). See also Restatement, Torts §§ 343, 348; 52 Am. Jur., *Theaters, Shows, Exhibitions, etc.*, § 71; 86 C. J. S., *Theaters & Shows*, § 41.

The accident took place not on the beach, but in the waters of Sabattus Pond, a great pond under our law. Questions therefore arise whether the extent of the defendant's invi-

tation to the plaintiff or the measure of defendant's duty to the plaintiff were thereby changed.

We start with the established principle that the plaintiff and the defendant as members of the public have the right to make use of the great pond for swimming and boating.

> "The right of the individual to fish and fowl in these waters, provided he can do so without committing trespass upon the cultivated land of littoral proprietor . . . . the right of boating, bathing, cutting ice (*Barrett v. Rockport Ice Co.*, 84 Maine, 155, 24 Atl., 802, 16 L.R.A., 774), and the supplying of water to a municipality for domestic uses, have all been recognized as among the public purposes which are within the regulation and control of the State."

> *Opinion of the Justices,* 118 Me. 503, 106 A. 865.

> "Fishing, fowling, boating, bathing, skating or riding upon the ice, taking water for domestic or agricultural purposes or for use in the arts, and the cutting and taking of ice, are lawful and free upon these ponds, to all persons who own lands adjoining them, or can obtain access to them without trespass, so far as they do not interfere with the reasonable use of the ponds by others, or with the public right, unless in cases where the legislature have otherwise directed."

> *Inhabitants of West Roxbury* v. *Stoddard & another,* 89 Mass. (7 Allen) 158, 171.

The obligations of those using a great pond for boating and swimming to each other are not in issue in this litigation. Our problem deals only with the patron-beach proprietor relationship taken in the setting of our great pond rule.

The plaintiff as we have seen was an invitee on the beach. In our view this relationship continued into the swimming area used by the defendant for the benefit of his business, with, however, significant changes arising from the great

pond rule. The measure of duty not to harm negligently the plaintiff, however, was not thereby altered or restricted. The duty, nevertheless, must be applied with reference to the extent of the defendant's invitation.

The rule is stated in Annot. 48 A. L. R. (2nd) 118, in these words:

> "In a few instances, where the waters used for bathing were public waters, the contention has been made that the owner or operator of a bathing resort offering such waters for the use of the public owed no duty of care, or at least a more restricted duty of care, to persons using such waters; however, this contention has been rejected in every instance."

*Skelly* v. *Pleasure Beach Park Corp.*, 115 Conn. 92, 160 A. 309, illustrates the principle. There the plaintiff was injured on striking a float maintained beyond low-water mark at defendant's beach on Long Island Sound. The court held the defendant owed a duty to exercise reasonable care to prevent injury to patrons using the waters in the usual and ordinary way and consistent with the invitation extended.

The rule applicable to the patron-beach proprietor relationship was stated by the Massachusetts Court in *Johnson* v. *Bauer* (Mass.), 198 N. E. 739, 740, involving injury to a diver:

> "In these circumstances the defendant's duty to the plaintiff—breach of which would constitute negligence on his part—was to use reasonable care to keep such accommodations in a reasonably safe condition for the plaintiff's use according to the invitation or to warn her against any dangers attendant upon this use which were not known to her or obvious to an ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the defendant."

See also *McKinney* v. *Adams*, 68 Fla. 208, 66 So. 988, L. R. A. 1915D 442 (life lines required by statute and life guards) ; *Perkins* v. *Byrnes*, 364 Mo. 849, 269 S. W. (2nd) 52, 48 A. L. R. 97 (failure to warn of undercurrent and no safety precautions) ; *Turlington* v. *Tampa Electric Co.*, 62 Fla. 398, 56 So. 696, 38 L. R. A. NS 72 (diving-depth of water) ; *Maehlman* v. *Reuben Realty Co.* (Ohio Ct. App.), 166 N. E. 920 (injury from broken bottle) ; *Beverly Beach Club* v. *Marron* (Md.), 192 A. 278 (cut foot).

In applying the governing principles to the facts, we conclude that a jury could not have found negligence on the part of the defendant.

In the first three charges of negligence, it appears that the defendant neither enclosed the bathing area, nor provided a lifeguard, nor warned the plaintiff that motorboats often came into the area. The facts on which these charges were based were supported by the evidence. The complaints, it is to be noted, relate to *warning* the operators of boats and the plaintiff swimmer.

In our opinion there was no breach of defendant's duty of due care under the circumstances from his failure to act in the manner outlined. The invitation insofar as the use of the swimming area was concerned, was limited in scope.

Under the great pond rule, the defendant had no possession or control of the swimming area such as we associate with possession or control of the beach or other premises, for example. The waters are public waters. The beach proprietor could not prevent boats from entering the swimming area, had he desired to do so.

Swimming and boating are obvious uses of our great ponds. One who swims or uses a boat in a great pond, it seems to us, does so with full knowledge that boats and swimmers are or may be using the same waters for equally

lawful purposes. A child of twelve knows he must share the use of the street with automobiles; and as a swimmer, must share the use of a great pond with boats.

In light of the lack of control over the swimming area and the obvious use of the pond for boating and swimming, we conclude that the defendant intended with reference to the plaintiff's swimming no more than to invite the plaintiff to exercise her right as a member of the public to swim in a great pond, using such facilities as the defendant provided.

The invitation no doubt raised a duty with reference to the diving float and the condition of the bottom of the lake in the swimming area, with neither of which we are here concerned. When we turn to the asserted acts of negligence, we find that the defendant at no time gave the plaintiff the slightest reason to rely on an enclosure of the swimming area (assuming without deciding that the defendant could lawfully "rope off" or "fence" the area), or on the presence of a lifeguard, or on any other warning. Thus no implication of a duty so to act arising from reliance by the plaintiff thereon in the past can be raised to charge the defendant.

The fourth charge of negligence is that the defendant failed to make the premises reasonably safe. The point here, however, is not that the premises, that is to say, the beach and bathing area, were not safe within the duty of the beach proprietor. Cases on safety of equipment, such as the float in *Skelly, supra,* present a different situation. The argument of the plaintiff is not that the equipment was not safe, but that the defendant failed to give warning.

We come to the fifth and last of plaintiff's claims, namely, that the defendant was negligent in failing to prevent or warn against the foreseeable negligent acts of the boat operators Boulette and Levasseur.

In our view, no question for the jury was raised by this claim. There are no facts, for example, pointing to a history or record of the negligent operation of motorboats along the shore during swimming periods, or, indeed of any other condition creating an appreciable hazard to the swimmer. The act of the boat operators could not have been foreseen by the defendant. At most, the accident arose from no more than an isolated instance of negligence on the part of the boat operators. A jury could not have found otherwise.

The language of *Hawkins* v. *Theatre Co., supra,* at p. 4, is in point:

> "The management of this theatre might well have been charged with notice that the filling of the balcony with children and the giving out of balloons would result in boisterous and unruly conduct. It was, accordingly, its duty to take reasonable precautions to restrain what all will concede are the ordinary inclinations of children under such circumstances. It was under no obligation to provide an attendant for every child, or to anticipate the isolated, wilful and sudden act of one boy, the natural tendency of which was to inflict serious harm upon another. There is no evidence that such an incident ever had happened before or that the defendant had any warning whatsoever that it was likely to take place. It was not a danger which it was bound to have foreseen or to have guarded against."

The jury could properly have found the plaintiff was in the exercise of due care. The decision rests, as we have indicated, on the failure of the plaintiff to produce evidence which would warrant a finding of defendant's negligence. The verdicts were properly directed for the defendant.

The entry in each case will be

*Exceptions overruled.*