**Charles BOETSCH**

v.

**The ROCKLAND JAYCEES.**

Supreme Judicial Court of Maine.

March 8, 1972.

Grossman, Faber & Miller, by A. Alan Grossman, Barry M. Faber, Rockland, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by Lawrence P. Mahoney, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal. Plaintiff, by his complaint, alleged that he suffered injuries resulting from the negligent manner in which the defendant conducted a "snowmobile" race open to the admission paying public. At the close of plaintiff's case, the Justice below granted defendant's motion for a directed verdict, pursuant to M.R.C.P., Rule 50(a).

The sole issue before us on appeal is the correctness of this ruling. We conclude that the Justice was in error.

 The test to be applied in determining whether a directed verdict is proper has been repeated in a long line of Maine cases.

"No citation of authority is necessary to establish the principle that in testing the propriety of a directed verdict the evidence must be viewed in the light most favorable to the party against whom the verdict is directed, and if any reasonable view of the evidence will allow recovery, the jury should act upon

it." Cogswell v. Warren Brothers Road Co. (Me.1967), 229 A.2d 215, 220.

With this rule in mind, we must view the evidence, "including every justifiable inference," in the light most favorable to the plaintiff so that we may decide whether by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained. MacLean v. Jack (1964), 160 Me. 93, 100, 198 A.2d 1, 5.

Upon the evidence presented, the jury would have been warranted in finding the following facts.

On February 8, 1969, Charles Boetsch, with two acquaintances, attended a snowmobile race at the Union Fairgrounds conducted under the auspices of the defendant, Rockland Jaycees. Plaintiff paid the required admission charge, received a brochure, and proceeded to the track area to watch the scheduled racing events. After he had watched one or two events, he went to the refreshment stand on the premises. While returning to the track area, his attention was diverted by an acquaintance standing near the fence. Plaintiff stopped to talk with him and after a few minutes had passed, a riderless snowmobile came over the adjacent snowbank and fence, striking and injuring the plaintiff and two others.

The scene of the accident was an "off-limits" area, just outside a curved part of the oval track. The track was separated from this area by a wire fence approximately five feet high, and had been plowed by the defendant in such a manner as to pile the snow against the fence, creating a banked curve. The plowed snow nearly equaled the fence in height.

The "off-limits" area was not designated by any visible markings (signs or rope), nor was there anyone in authority stationed in the area to prevent spectators from assembling and remaining there. However, the area was designated on a map of the track which appeared in a brochure given to each patron. On cross-examination plaintiff testified that he had seen the "off-limits" area designated on the map.

There was testimony that several loudspeaker announcements had been made during the course of the day requesting spectators to stay out of this area. However, because of the loud noise created by many unmuffled snowmobiles, the effectiveness of the loudspeaker announcements was questionable. The plaintiff testified that he never heard any such warnings. In any event, there were several people gathered in the "off-limits" area, evidencing either a general disregard for its status or a lack of knowledge of that fact. One witness testified "people would not just walk through, they had a tendency to stop in that area."

The snowmobile involved in the accident, operated by a female contestant in a "powder-puff" event, had been damaged while participating in the race. The handlebars, to which the throttle is attached, were broken. A flagman started toward the contestant with the disabled machine but she "walked" the machine away under power before he reached her. Another flagman, waving a red flag, shouted at her to stop the machine. He was approximately fifteen feet away at that time. At this point the motor stalled and the contestant placed the handlebars on the seat. The flagman again "hollered at her" not to start the machine. However, she pulled the starter cord and the snowmobile "took off at full throttle," obviously out of control. It hurtled, riderless, over the snow bank at a high rate of speed, striking and injuring the plaintiff.

■ The plaintiff was a business invitee. Gratto v. Palangi (1958), 154 Me. 308, 147 A.2d 455. The duty owed to a business invitee has been clearly stated in several Maine cases.

"The obligation which the proprietor of a threater or amusement enterprise owes to his guests has been clearly set forth. He must guard them not only against dangers of which he has actual

knowledge, but also against those which he should reasonably anticipate. . . . The failure to carry out such a duty is negligence. A recovery may be had, even though the willful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen. . . ." Hawkins v. Maine & New Hampshire Theaters Co. (1933), 132 Me. 1, 4, 164 A. 628, 629. *See also* Gratto v. Palangi, *supra.*

"As a business invitee upon defendant's premises [plaintiff] was owed by the defendant the duty that defendant would exercise reasonable care to provide her with premises and installations which were reasonably safe for her use. . . ." Orr v. First National Stores, Inc. (Me.1971), 280 A.2d 785, 789.

"The rule is well established that the proprietor of a business establishment owes to his patrons the duty of *exercising reasonable care* to keep the premises reasonably safe. It is important to note that he is not required to keep the premises reasonably safe but only to exercise ordinary and reasonable care to that end. . . ." *Id.* at 800, WEBBER, J. (dissenting).

The tortious acts, or omissions, must be such that injuries generally similar to that complained of would have been reasonably foreseen by people of ordinary care and prudence in light of all attending circumstances. Kuemmel v. Vradenburg (Tex. Civ.App.1951), 239 S.W.2d 869. Foreseeability is a word of art:

"[I]t is unessential that the *precise* manner in which injuries might have occurred, or were sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of injury was within

this range. . . ." *Orr, supra,* 280 A. 2d at 794.

The jury need not specifically conclude the defendant should have foreseen that this accident would happen as a result of its unique factual background; rather, it is only necessary that the jury be able to find that the defendant should have reasonably foreseen that its failure to protect the spectators created "risks of harm *greater* than are *reasonably* to be tolerated." *Orr, supra,* at 789.

Because the snowmobile is of relatively recent origin, no cases have been cited nor have we discovered any case law pertaining specifically to their use or misuse. Therefore, there is little or no precedent concerning their characteristics or propensities.[1] They are a comparatively modern innovation in the field of winter travel.

Automobile racing provides the closest analogy to the instant case. One common feature between an automobile and a snowmobile is that both are propelled by gasoline powered engines and are capable of attaining high speeds. Uncontrolled, both are capable of causing injury to spectators attending racing events who are not afforded reasonable protection.

Ineffective barriers, inadequate policing, failure to inspect the track, inability to control the spectators at dangerous areas, absence of adequate warning signs, and inefficient patrolling of the forbidden areas have been held to support negligence actions against the sponsors of racing events. Saari v. State (1953), 203 Misc. 859, 119 N.Y.S.2d 507; Kuemmel v. Vradenburg, *supra*; Virginia State Fair Ass'n, Inc. v. Burton (1944), 182 Va. 365, 28 S. E.2d 716; Arnold v. State (1914), 163 App.Div. 253, 148 N.Y.S. 479; Turgeon v. Connecticut Co. (Conn.1911), 84 Conn. 538, 80 A. 714. These jurisdictions hold the race sponsor to the well established

1. Pursuant to his authority under 12 M.R. S.A. § 1979 (Public Laws of 1969, ch. 414) the Commissioner of Inland Fisheries and Game promulgated Regulation Number One, a provision for the protection and safety of spectators during or at snowmobile races, on January 12, 1970.

standard of liability; namely, that it exercise reasonable care to provide reasonably safe premises for the spectators, guarding them against all reasonably foreseeable dangers.

■ On the facts before us we conclude that the jury should have been allowed to evaluate the evidence and apply the standards of liability thereto. Was there a negligent failure to provide a reasonably safe barrier? Would an inspection of the track at the point of the accident indicate danger?[2] If the "off-limits" area was dangerous, were adequate warnings given, visually or verbally? Should the defendant have taken such means as may have been necessary to keep spectators from this area? Should the flagman have taken definitive action to remove the damaged snowmobile from the track?

Should the jury decide that the defendant violated the duty owed the plaintiff, and that such violation was a proximate cause of the plaintiff's injuries, it might also appraise the conduct of the plaintiff to determine whether the plaintiff's causal fault, if any, was lesser, equal to or greater than that of the defendant. 14 M.R.S. A. § 156.

The correct approach under the circumstances of this case, the plaintiff being a business invitee, is to allow the jury to apply to the facts *in their totality* the fundamental legal criteria of liability.

In short, we cannot say *as a matter of law* that a jury could not reasonably resolve the facts in favor of the plaintiff. In this posture, a directed verdict for the defendant was error.

The entry is

Appeal sustained. Case remanded for a new trial.

All Justices concurring.

2. A flagman testified:
"Q. Would you consider it a steep banking?
A. Oh, I wouldn't hesitate for a minute to go over it with a snowmobile . . .

Q. You would go over it with a snowmobile?
A. Certainly.
Q. And this is how high again, sir?
A. Probably four and a half feet."