[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #108
The plaintiffs, the estate of Gerald A. Barstowe by CT Page 7643 administratrix Audrey M. Lyles, Audrey M. Lyles, individually, and Ashley Wallace, Whitney Little and Para Little, by and through Audrey Lyles, filed a fifteen-count amended complaint on April 11, 1997 against the defendants, the City of Stamford (city) and Stephen L. Elkins (Elkins), the Stamford Director of Parks and Recreation. The plaintiffs allege the following facts. On July 4, 1995, Gerald Barstowe died as a result of a swimming accident at Southfield Park in Stamford. Southfield Park is a public park owned, maintained and controlled by the city, which included Southfield Beach. The decedent was the son of the administratrix and the brother of Ashley Wallace, Whitney Little and Para Little. Each of the plaintiffs became aware that the decedent was in distress while in the water and needed assistance The estate of the decedent alleges in counts one that the city was negligent in that it, failed to provide at Southfield Park (1) adequate supervision, (2) lifeguards, (3) warnings that swimming was prohibited, (4) signs indicating that no lifeguard was on duty, (5) adequate means of communication in the event of an emergency, (6) signs indicating directions to the nearest telephone, first aid unit and resuscitation unit, or emergency telephone numbers, (7) water rescue equipment, and (8) a fence or other barricade preventing people from using the beach and from entering the water. The estate of the defendant allege in count two that the decedent's death was caused by the negligence of Elkins for the reasons enumerated above. The decedent's estate alleges in count three that despite the existence of the conditions outlined above, the city opened the park, thereby creating a nuisance. Counts four, seven, ten and thirteen reallege that the decedent's death was caused by the negligence of the city for the reasons enumerated above, and alleges claims for bystander emotional distress. Counts five, eight, eleven and fourteen reallege the negligence claims made against Elkins for the reasons enumerated above, and allege bystander emotional distress claims. Counts six, nine, twelve and fifteen reallege nuisance claims against the city for the reasons enumerated above, and allege bystander emotional distress claims.[1]
On May 5, 1997, the defendants filed a motion to strike each of the counts of the amended complaint on the following grounds: (1) counts three, six, nine, twelve and fifteen, alleging claims based on nuisance, fail to allege that the conditions constituting the nuisance were created by a positive act of the defendants, (2) the nuisance counts alleged by the bystanders fail to state claims distinct from the claims of negligent infliction of emotional distress,[2] (3) the negligent CT Page 7644 infliction of emotional distress claims fail to allege that the bystander plaintiffs observed the injury inflicted upon the decedent, (4) the claims made against Elkins are legally insufficient because as a matter of law his supervisory capacity entitles him to governmental immunity, (5) the claims made against the city based on the actions of unnamed individuals are insufficient in that theories of vicarious liability are inapplicable to the city except for actions under General Statutes § 7-465, and (6) the counts based on negligence and nuisance fail to articulate legal duties owed to the plaintiffs and/or fail to identify breaches of claimed duties that could be characterized as proximate causes of the decedent's death. The plaintiffs filed a memorandum in opposition to the defendants' motion to strike on August 25, 1997. The defendants filed a corrected reply brief on October 7, 1997. The plaintiffs filed a surreply on January 8, 1998, and a supplemental memorandum in opposition on April 1, 1998. The matter was heard by the court on April 6, 1998.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [The court] must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71 (1998).
 A. Allegations of Nuisance Against the City: Counts 3, 6, 9, 12, 15
The defendants argue that the plaintiffs have failed to allege any positive act which created the alleged nuisance. The defendants also argue that the allegation in the amended complaint that the defendants took the positive step of "opening" the park each day does not support the plaintiffs' nuisance allegations. The defendants argue that even assuming such an act constitutes a positive act, it is not the condition that caused the injuries forming the basis of the nuisance counts and did not create such a condition.
The plaintiffs argue that they specifically pleaded that the defendants created an actionable nuisance when they took the CT Page 7645 positive step of opening the park and making it available to the public without restricting access to the waterfront for swimming at a time when the general conditions within and at the facility created a natural tendency to inflict injury. The plaintiffs argue that it is through this combination of factors, the unprotected condition of the beach and the positive act of opening the beach to the public, that the defendants created the nuisance in this case. "A public nuisance exists if: (1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the condition or conduct complained of interferes with a right common to the general public." Keeney v. Town of Old Saybrook, 237 Conn. 135, 162-63,676 A.2d 795 (1996). "[L]iability can be imposed on the municipality only in the event that, if the condition constitute[s] a nuisance, it was created by some positive act of the municipality." Id., 164.
The court concludes that the plaintiffs have alleged sufficient facts to state a claim against the city for creation and maintenance of a public nuisance in the amended complaint. InStoto v. Waterbury, 119 Conn. 14, 18-19, 174 A. 189 (1934), the court held that where a municipality caused a gated areaway to be constructed, and its agents and servants left it unopened and unguarded when they should reasonably have anticipated the likelihood of danger to persons using the public highway, a public nuisance was created for which the municipality could be held responsible. When read in the light most favorable to the plaintiffs, the allegations in the amended complaint likewise demonstrate that the city created a dangerous condition on the beach by failing to provide lifeguards or post "no swimming" signs. The city then acted positively by opening Southfield Park in the morning to the public, including the beach portion of the park, despite the fact that there were no lifeguards or "no swimming" signs posted. Therefore, when taken as a whole, the plaintiffs have alleged sufficient facts in counts three, six, nine, twelve and fifteen to support their allegations of public nuisance. Accordingly, the defendants' motion to strike counts three, six, nine, twelve and fifteen on this ground is denied.
 B. Requirement of "Sensory Perception" To Sustain Bystander Claims In Counts Four Through Fifteen
The defendants argue that all of the bystander claims (counts CT Page 76464-15) are legally insufficient. The defendants argue that in addition to requiring a close relationship, Clohessy v. Bachelor,237 Conn. 31, 675 A.2d 852 (1996), in which the Supreme Court first recognized a cause of action for bystander emotional distress, requires that the emotional injuries be "caused by the contemporaneous sensory perception of the event or conduct that causes the injury or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location . . . ." (Citations omitted.) Id., 56. The defendants argue that the plaintiffs have failed to plead facts showing that they observed the decedent in distress, or any aspect of the injuries sustained by the decedent.
The plaintiffs counter that each plaintiff saw the decedent's body when it was pulled from the water. The plaintiffs also argue that each of the plaintiffs was at Southfield Park at the time of the drowning and throughout the failed rescue attempt, and became aware of the decedent's distress when the decedent's swimming companion emerged from the water. The plaintiffs argue that these allegations satisfy the requirement in Clohessy that the plaintiffs be "physically present at the scene of the accident or arrive shortly thereafter." Id., 52-53, quoting Gain v. CarrollMill Co., 114 Wash.2d 254, 261, 787 P.2d 553 (1990).
The court must conclude that the plaintiffs have failed to plead facts which satisfy the sensory perception requirement ofClohessy. The plaintiffs have pleaded the following facts. Throughout the period that the decedent was in the water, the individual plaintiffs were in Southfield Park. (Amended complaint, counts four through fifteen, ¶ 20). Soon after the decedent's companion came out of the water, the individual plaintiffs became aware that the decedent's life was seriously threatened and that it was likely he had drowned. (Amended complaint, counts four through fifteen, ¶ 21). Although the plaintiffs argue that they actually saw the decedent's body being pulled from the water by rescue personnel, this allegation is not in the amended complaint.
In Abbhi v. AMI, Superior Court, judicial district of New Haven at New Haven, Docket No. 382195 (August 11, 1997, Silbert, J.) (19 CONN. L. RPTR. 493, 500), the court granted the defendant's motion to strike a mother's bystander emotional distress claim where "the plaintiff mother [alleged] not that she contemporaneously observed the alleged event . . . or conduct of the defendant . . . that caused the injury, but rather only that CT Page 7647 she contemporaneously observed . . . the injury . . . experienced by her daughter.'" Id. The Abbhi court opined that the Supreme Court would find that under such circumstances, the mother would be considered too far removed from the decedent's injury to recover, "even though she was present to see its tragic aftermath." Id.
Similarly, the plaintiffs here have failed to allege facts indicating that they contemporaneously observed the decedent under distress in the water, or that they saw the decedent immediately after he was pulled from the water by rescue personnel. Accordingly, the defendants' motion to strike the bystander emotional distress claims in counts four through fifteen of the amended complaint is granted.[3]
 C. Governmental Immunity as to Defendant Elkins: Counts Two, Five, Eight, Eleven and Fourteen
The defendants argue that Elkins, as director of parks and recreation of the city, had only supervisory and discretionary responsibilities, and thus is entitled to the protections of the governmental immunity doctrine. The defendants also argue that the plaintiffs have failed to plead any exceptions to the doctrine. The defendants further contend that the plaintiffs' attempts to plead subsections of state regulations in an effort to argue that Elkins owed the decedent a ministerial duty must fail.
The plaintiffs counter that each count directed at Elkins contains an allegation of indemnification under General Statutes § 7-465, which provides in part that governmental immunity shall not be a defense in any action brought under this section.[4] In the alternative, the plaintiffs argue that Elkins breached ministerial duties delineated in state safety regulations, or that the "identifiable person" exception to the governmental immunity doctrine is applicable. The plaintiffs argue that whether a municipal employee was performing discretionary or ministerial duties is a factual question which should not be decided by a motion to strike. The plaintiffs seek to have the trier of fact determine whether the defendants breached an enhanced duty of care owed to children, based on Elkin's reasonable expectation that children would swim at Southfield Beach on the Fourth of July. The plaintiffs also urge that because the city derives a pecuniary benefit from the operation of Southfield Park, Elkins' failure to provide adequate CT Page 7648 supervision and warnings to park-goers precludes his ability to claim the protections of governmental immunity. Finally, the plaintiffs argue that to hold Elkins immune from liability would contravene the public policy of this state that appropriate safety precautions need to be taken at municipally-owned recreational areas.
"Notwithstanding the procedural posture of a motion to strike, [the Supreme Court] has approved the practice of deciding the issue of governmental immunity as a matter of law." Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988). Here, the allegations in counts two, five, eight, eleven and fourteen of the amended complaint refer to the operation of a public recreational facility which was owned, controlled and maintained by the city. In Wysocki v. Derby, 140 Conn. 173, 175,98 A.2d 659 (1953), it was decided that a city, in operating and managing a public park acts as a governmental agency, exercises an authority delegated to it by the state and that liability for the negligent performance of a purely public governmental duty may occur only when a statute so provides. "Whether the acts complained of in operating a city park were governmental or ministerial [however], is a factual question which depends upon the nature of the act complained of. . . . If the acts are considered governmental in character, the [defendants are] not liable [if] the [plaintiffs have] not alleged a statutory liability . . . ." (Citations omitted.) Gauvin v. New Haven,187 Conn. 180, 186, 445 A.2d 1 (1982). See also Williams v. City ofNew Haven, 243 Conn. 763, 766 (1998) (liability for the negligent performance of a purely public governmental duty may occur only when a statute so provides).[5] Whether the allegations made against Elkins involve discretionary or ministerial acts is a factual question, the resolution of which is not clear from the face of the complaint. "A determination of whether an act is discretionary or ministerial does not lend itself to resolution by a motion to strike." Rosen v. Reale, Superior Court, judicial district of New London at New London, Docket No. 527510 (January 12, 1994, Hurley, J.).
Accordingly, a municipality operating and managing a public park may be entitled to governmental immunity. However, the defendants' motion to strike count two[5] on the basis of governmental immunity is denied, as it is not clear from the complaint whether the defendants' alleged failures involve discretionary or ministerial acts. CT Page 7649
 D. Vicarious Liability For Unnamed Defendants
The defendants argue that pursuant to General Statutes §7-465,[6] the city is liable only when the liability of a specific employee is first established. The defendants also argue that the common law doctrine of respondeat superior is inapplicable to municipalities. The defendants further argue that General Statutes § 52-557n(a)(1)[7] does not provide the means by which the plaintiffs may bring a direct cause of action against the city. The defendants argue that if § 52-557n
allows for direct vicarious liability for a municipality without requiring that municipal employees be named, then § 7-465
becomes superfluous.
The plaintiffs argue that § 52-557n(a) creates statutory vicarious liability for municipalities where none existed in prior common law. The plaintiffs also argue that the statute, unlike § 7-465, does not refer to indemnification issues.
"The legislature . . . has set forth general principles of municipal liability and immunity in General Statutes §52-557n. Williams v. City of New Haven, supra, 243 Conn. 767. "The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in General Statutes §52-557n." Bonamico v. City of Middletown, 47 Conn. App. 758, 761
(1998).
In Marotto v. Gaudet, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 450581 (December 3, 1992, Langenbach, J.) (8 CONN. L. RPTR. 49, 8 CSCR 82), the municipal defendants argued that direct causes of action brought against the town of Windsor for the injuries caused by the negligence of its employees pursuant to § 52-557n should be struck, because the statute did not provide for a direct cause of action. Id., 83. The defendants here rely on Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 592 A.2d 912 (1991), in support of their statutory argument. In Sanzone, the court determined that § 52-557n precluded a plaintiff from bringing a defective highway action against a municipality pursuant to § 7-465, basing its reasoning on the provision of § 52-557n which reads in pertinent part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by [§ 52-557n(a)(1)(A), (B) or (C)] . . . provided, no cause or action shall be maintained for damages resulting from injury to any person or property by means CT Page 7650 of a defective road or bridge except pursuant to section 13a-149
of the General Statutes." General Statutes § 52-557n(a)(1). The Sansone court interpreted this language to make General Statutes § 13a-149 an exclusive remedy against a municipality for injuries arising from highway defects. "The defendants' argument that the rules of statutory construction utilized in Sanzone,supra, require that this court interpret § 52-557n
to bar these plaintiffs from bringing an action under it because they may bring an action under § 7-465 is erroneous. Both statutes can be read together and are not contradictory.'" Marottov. Gaudet, supra, 8 CONN. L. RPTR. 49, 8 CSCR 84. See alsoBorchetta v. Brown, 41 Conn. Sup. 420, 424, 580 A.2d 1007
(1990) (section 7-465 does not preempt § 52-557n
because the latter uses the words "[e]xcept as otherwise provided by law;" both statutes can be read together and are not contradictory); Krebs v.Chilson Excavating, Superior Court, judicial district of Waterbury, Docket No. 099497 (March 13, 1992, Barnett, J.) (6 CONN. L. RPTR. 194, 196-97) (denying a defendant's motion to strike a claim against a municipal defendant under §§ 52-557n and 7-465
because the claims did not allege a defective highway).
"General Statutes § 52-557n imposes liability directly on the Town for the negligence of its employees under certain circumstances, while General Statutes § 7-465 provides that a municipal employer must indemnify its employees for judgments rendered against it in certain circumstances." Marotto v. Gaudet,supra, 8 CONN. L. RPTR. 49, 8 CSCR 83. See also Wiggins v. Leca, Superior Court, judicial district of Waterbury, Docket No. 125117 (April 23, 1996, Sullivan, J.) (16 CONN. L. RPTR. 502) (General Statutes § 52-557n provides for a direct cause of action against the municipality as the principal of the negligent agent, akin to the common law doctrine of respondent superior); Levien v. Iron HorseDevelopment, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 050131 (March 26, 1996, Skolnick, J.) (pursuant to § 52-557n, a plaintiff may sue a municipality directly and forego suing the municipal official under General Statutes § 7-465). Accordingly, the defendants' motion to strike on the ground that § 52-557n does not provide for a direct cause of action against the municipal defendants is denied, as the plaintiffs have pleaded that the city should be held liable for the negligence of Elkins, an identified employee. Furthermore the plaintiffs may plead causes of action under both § 71-465 and § 52-557n, since each can be read together and are not mutually exclusive. Thus, the defendants' motion to strike the claims against the city in count CT Page 7651 two[8] of the amended complaint is denied.
 E. Allegations of the Existence of a Duty and of the Breach of Such Duties Owed by the Defendants to the Plaintiffs
The defendants argue that in their specifications of negligence, the plaintiffs assert various failures and omissions, but that these failures and omissions do not amount to an actionable duty and/or cannot constitute a proximate cause of the injuries. The plaintiffs contend that the question of causation is a factual issue best left to the trier of fact, and therefore it is inappropriately decided by a motion to strike. Furthermore they urge that open and accessible bodies of water are inherently dangerous, particularly when children are known and encouraged to play by the water. They conclude that had the defendants exercised the duty of care in a reasonable manner, they would have either taken action to prevent swimming at Southfield Park or would have provided a lifeguard. The plaintiffs argue that had either of these precautions been taken, the decedent's death would have been avoided, since the decedent would have been prevented from entering the water, the accident would have been prevented from occurring, or the decedent's life would have been saved once he was in distress.
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) Maffucci v. Royal Park Limited Partnership,243 Conn. 552, 566 (1998). "One who assumes to offer the use of public waters for bathing in connection with bathhouses and other appropriate appliances maintained by the owner of the shore, owes a duty to exercise reasonable care to prevent injury to patrons who use the waters in the usual and ordinary way and consistent with the invitation extended. Though the waters are public and no governmental authority be expressly given to so offer them for use, one who assumes to so offer the use of the waters also assumes the legal duties and liabilities that are commensurate with such . . . use. The nature of such use fixes the duties and correlative liabilities. . . . The nature of the use and the extent of the premises covered by an implied invitation to use, may be determined by the continued and general custom of the patrons of the place." (Internal quotation marks omitted.) SkellyCT Page 7652v. Pleasure Beach Park Corp. , 115 Conn. 92, 97, 160 A. 309
(1932). "If the conduct of the business of a public resort requires the proprietor in the exercise of reasonable care to furnish provision for guarding the patrons from danger in availing themselves of the attractions and enjoyments of the resort, or provision for aiding them in escaping from such danger resulting from their use of these facilities, or for saving them after they have through their negligence gotten themselves into the danger, he must make such reasonable provision." Nordaren v.Strong, 110 Conn. 593, 601, 149 A. 201 (1930).
The plaintiffs have alleged the following facts in the amended complaint. The defendants owned and controlled Southfield Park at the time of the accident. (Amended complaint, count one ¶ 7). Southfield Park consisted of a beach area which served as a bathing place with an established swimming area. (Amended complaint, count one ¶ 8). The park and beach were open to the public on the day of the accident and there were numerous people using the park facilities. (Amended complaint, count one ¶¶ 9 and 12). Based on the allegations in the amended complaint, it is submitted that the plaintiffs have demonstrated that the defendants owed them a duty of care to make reasonable provisions for guarding them against the inherent dangers of open waters. Given the fact that patrons were admitted on the Fourth of July holiday to the park where there was a beachfront, it would not be unreasonable for the defendants to foresee that some of the patrons, including children like the decedent, would avail themselves of the water in the absence of signs or fences preventing them from doing so.
In Vignone v. Pierce Norton Co., Inc., 130 Conn. 309,310-11, 33 A.2d 427 (1943), the plaintiff's decedent drowned when he tried to swim to shore from a rowboat which became filled with water as a result of running afoul of wakes left by speedboats operating in close proximity. The plaintiff sued the defendant, alleging in part that the defendant failed to provide any lifeguards or lifeguards in a sufficient number to protect all persons using the lake. The court held that if the jury found that the defendant lake operator allowed speedboat operators to travel within ten to twenty-five feet of rowboats, and that lifeguards were not provided for this portion of the lake, it would be for the jury to determine "whether the defendant should reasonably have anticipated danger that rowboats would be filled with water by the operation of the speedboats and whether reasonable care required that it maintain an adequate number of CT Page 7653 lifeguards to go to the rescue if the occupants of any rowboat might thereby be endangered." Id., 312.
"The determination of proximate cause is ordinarily a question of fact for the trier; it becomes a question of law only when the mind of a fair and reasonable person could reach only one conclusion . . . . The question should be submitted to the trier of fact if there is room for reasonable disagreement." (Citation omitted; internal quotation marks omitted.) Coste v.Riverside Motors Inc., 24 Conn. App. 109, 114, 585 A.2d 1263
(1991). Here, the plaintiffs should be afforded the opportunity to prove a causal link between the defendants' alleged failure to provide lifeguards or post "no swimming" signs and the decedent's death. Whether the plaintiffs are able to do so, thereby establishing all the necessary elements of negligence against the defendants, should be decided by the trier of fact. Accordingly, the plaintiffs have alleged sufficient facts to demonstrate that the defendants, in opening a public park with a waterfront to the public, including the minor decedent, owed a duty to the public to take reasonable measures to ensure the safety of the use of the water area. Furthermore the issue of proximate cause is a matter best left to the province of the trier of fact. SeeSpeiser v. Percell, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 316540 (December 13, 1995, Maiocco, J.). For these reasons, the defendants' motion to strike the plaintiffs' negligence claims in counts one and two are denied.
 IV. CONCLUSION
The defendants' motion to strike counts four through fifteen for failure to state a claim for bystander emotional distress are granted. The defendants' motion to strike is denied as to all remaining counts.
SKOLNICK, J.